COMMONWEALTH *vs.* MARIA ORTIZ.

Plymouth. April 7, 1997. - May 8, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, & FRIED, JJ.

*Joint Enterprise. Practice, Criminal,* Instructions to jury, Sentence. *Controlled Substances. Evidence,* Chain of custody. *Entrapment.*

Discussion of the law of criminal joint venture. [855-858]

There was no substantial risk of a miscarriage of justice at the trial of two indictments for trafficking in cocaine, one of which was prosecuted on a joint venture theory, arising from the judge's incorrect instruction on joint venture referring to the necessity of proof of the defendant's presence at the scene of the crime, where the Commonwealth's proof was more than sufficient to establish the defendant's culpability as a joint venturer without the requirement of her presence and where the evidence was clear that the defendant was not in fact present. [858-860]

There was no merit to a criminal defendant's claim that evidence as to which the chain of custody had been established was nonetheless not properly authenticated [860], or that the judge should have instructed on the theory of so-called "sentencing entrapment" [860-861].

INDICTMENTS found and returned in the Superior Court Department on March 30, 1993.

The cases were tried before *Judith A. Cowin*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*William M. Leonard* for the defendant.

*John E. Bradley*, Assistant District Attorney, for the Commonwealth.

GREANEY, J. We allowed the Commonwealth's application for direct appellate review in connection with the defendant's appeal from her convictions after a jury trial on two indictments charging trafficking in cocaine, G. L. c. 94C, § 32E (*b*).[1] We examine the defendant's contentions that (1) she was entitled to a required finding of not guilty on the trafficking

[1]One indictment charged the defendant with trafficking in cocaine having a net weight between fourteen and twenty-eight grams, while the other

charge that was prosecuted on a joint participation theory (no. 93934); (2) evidence of the cocaine involved in both trafficking charges was admitted in evidence without proper "identification" by the authenticating police officer; and (3) she was improperly denied an opportunity to raise an issue concerning "sentencing entrapment." We affirm the defendant's trafficking convictions.

Based on the evidence and reasonable inferences most favorable to the Commonwealth, the jury could have found the following facts. In February, 1993, Sergeant Kenneth LeGrice of the Brockton police, an experienced narcotics investigator, became involved in an undercover investigation that involved the defendant and an Hispanic man later identified as Braudilio Martinez. On February 3, 1993, Sergeant LeGrice bought four bags of cocaine from the defendant and Martinez for $150. On February 6, 1993, Sergeant LeGrice made a second purchase of cocaine from the defendant for $150. These transactions were followed by two additional purchases of cocaine by Sergeant LeGrice, on February 12 and 13, 1993. On both occasions, the defendant and Martinez jointly participated in the sale.

Just after 10 P.M. on February 19, 1993, Sergeant LeGrice made contact by telephone with the defendant and asked to purchase three "eight-balls" of cocaine. (The term "eight-ball" is street vernacular for one-eighth of an ounce of cocaine, or approximately 3.5 grams). After negotiation, a price of $450 was agreed on, with the defendant indicating to Sergeant LeGrice that she would throw in a free $40 bag of cocaine (commonly referred to in street vernacular as a "forty," and weighing about one gram).[2] The cocaine was brought to the delivery point by a man who identified himself only as "Junior." "Junior" carefully counted the $450 in cash

indictment charged her with trafficking in cocaine having a net weight between twenty-eight and one hundred grams.

The jury also convicted the defendant on five other indictments charging the distribution of cocaine. The judge set aside the verdicts on these indictments because she had mistakenly instructed the jury on possession with intent to distribute cocaine rather than distribution, as had been charged. The defendant subsequently entered guilty pleas on these five additional indictments.

[2]According to the evidence, the defendant also consulted with another person in the background during the telephone conversation, who agreed to the price and the "free forty."

tendered by Sergeant LeGrice because "Braudilio [Martinez] told [me] to count it," before handing over to Sergeant Le-Grice four bags containing, in the aggregate, 17.36 grams of cocaine. In the continuing criminal enterprise, this sale became the subject of the first trafficking indictment (no. 93934), on which the defendant was tried as a joint participant.

On February 24, 1993, Sergeant LeGrice made a sixth purchase of cocaine from the defendant when he bought directly from her an "eight-ball" for $160. The investigation was brought to a close on February 26, 1993, when the defendant agreed to sell Sergeant LeGrice six "eight-balls" of cocaine for $920. At the delivery point for this sale, the defendant, accompanied by Martinez and another Hispanic woman, handed Sergeant LeGrice, in exchange for the $920, seven bags of cocaine, totalling 28.54 grams. (Sergeant Le-Grice was told that the seventh bag, which was an extra bag beyond the bargained-for six, was "a free forty . . . for you"). The defendant, Martinez, and the other Hispanic woman who accompanied them were arrested shortly after the sale in keeping with prearranged plans by the police. This sale, the seventh in the continuing series of transactions between the defendant, Martinez, and Sergeant LeGrice, became the subject of the second trafficking indictment (no. 93936).

1. As has been mentioned, the charge of trafficking that arose out of the sale on February 19, was tried on the theory that the defendant jointly participated in the transaction. The defendant moved for a required finding of not guilty on all seven charges being considered by the jury, asserting in the motion, in general terms, that the Commonwealth's evidence was insufficient to allow the jury to conclude that the elements of each offense had been proved beyond a reasonable doubt. The motion was denied. The defendant now argues that the motion should have been granted on this trafficking charge because the test for joint participation requires, among other factors, that each participating defendant be present at the scene. In keeping with this theme, the defendant argues in her brief as follows: "Since no evidence was presented that the defendant was present at the scene when Junior sold four bags [of cocaine] to [Sergeant] LeGrice, there could be no joint venture. Since there is no joint venture, there is no other theory whereby the Commonwealth could charge the defendant with trafficking."

Our decisions have set forth two theories that can sustain a defendant's conviction as a joint participant with another (or others) in the commission of a felony.[3] A defendant can be convicted as a joint participant in a felony, if he or she was "(1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary." *Commonwealth* v. *Longo,* 402 Mass. 482, 486 (1988), quoting *Commonwealth* v. *Bianco,* 388 Mass. 358, 366, *S.C.,* 390 Mass. 254 (1983). A defendant may also be convicted as a joint participant in a felony if the defendant "aids in the commission of a felony, or is an accessory thereto before the fact by counselling, hiring or otherwise procuring such felony to be committed." G. L. c. 274, § 2. *Commonwealth* v. *Raposo,* 413 Mass. 182, 184-185 (1992). See J.R. Nolan & B.R. Henry, Criminal Law § 633, at 521-523 (2d ed. 1988). While the statute requires something more than mere acquiescence, physical participation is not required so long as there is "association with the criminal venture and any significant participation in it." *Commonwealth* v. *Raposo, supra* at 185, quoting *Commonwealth* v. *Morrow,* 363 Mass. 601, 609 (1973). The point of difference between the two theories is the factor of the defendant's presence at the scene of the felony. Despite this factor, our decisions have spoken of the two theories interchangeably.[4]

The second theory of accomplice liability had its inception in the four early common law classifications that defined par-

---

[3]We are not concerned in this case with the crime of conspiracy.

[4]For decisions considering presence at the scene as a factor in determining joint criminal liability see: *Commonwealth* v. *Williams,* 422 Mass. 111, 121 (1996); *Commonwealth* v. *Schand,* 420 Mass. 783, 793-794 (1995); *Commonwealth* v. *Valentin,* 420 Mass. 263, 266 (1995); *Commonwealth* v. *Lombard,* 419 Mass. 585, 588 (1995); *Commonwealth* v. *Nichypor,* 419 Mass. 209, 211-212 (1994); *Commonwealth* v. *Chipman,* 418 Mass. 262, 268 (1994).

For decisions defining joint criminal liability in terms of the second theory without regard to the factor of presence see: *Commonwealth* v. *Stewart,* 411 Mass. 345, 350 (1991); *Commonwealth* v. *Bongarzone,* 390 Mass. 326, 346 (1983); *Commonwealth* v. *Richards,* 363 Mass. 299, 307-308 (1973). A typical statement in these decisions reads as follows: "A joint venturer is 'one who aids, commands, counsels, or encourages commission of a crime while sharing with the principal the mental state required for the crime.' " *Commonwealth* v. *Stewart, supra,* quoting *Commonwealth* v. *Soares,* 377 Mass. 461, 470, cert. denied, 444 U.S. 881 (1979).

ties to a felony in terms of principals in the first or second degree and accessories before and after the fact. The classifications inevitably led to numerous procedural difficulties that tended to shield an accessory before the fact from punishment even though the accessory's active criminal involvement in the felony was clearly established beyond a reasonable doubt. "This [common-law approach was] undoubtedly another instance of resort to procedural niceties in order to limit the application of the death penalty, which at early common law was the penalty for all parties to any felony."[5] 2 W.R. LaFave & A.W. Scott, Jr., Criminal Law § 6.6(d), at 130 (1986).

Consistent with the action taken by most States, Massachusetts has corrected these problems by means of legislation, specifically by G. L. c. 274, § 2, which makes a joint participant in the commission of a felony liable to the same extent as the principal felon, and by G. L. c. 274, § 3, which removes the impediments described in note 5, *supra*. See *Commonwealth* v. *Benjamin*, 358 Mass. 672, 680-681 (1971) (discussing impetus behind statute). The effect of these statutes is to abrogate the distinction between principals and accessories before the fact, although G. L. c. 274, §§ 2 and 3, still continue to use the term "before the fact," and neither statute (as is the case with the statutes of some other States) explicitly addresses the common law factor of presence. Compare Idaho Code § 18-204 (1987 & Supp. 1996) ("All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense or aid and abet in its commission, or, not being present, have advised and encouraged its commission, or who, by fraud, contrivance, or force, occasion the intoxication of another for the purpose of causing him to commit any crime, or who, by threats, menaces, command or

---

[5]Some of the difficulties that led to illogical results include jurisdictional difficulties (an accessory could be tried only in the State where his acts took place, which could be a different State from the one where the felony was committed), and with variances between charge and proof (a principal could not be convicted on proof that he was an accessory and vice versa). There also was the problem that an accessory could not be convicted until the principal had been convicted and could not be placed on trial in advance of the principal, even if the principal could not be tried because he could not be found or had died. See 2 W.R. LaFave & A.W. Scott, Jr., Criminal Law § 6.6 (d), at 130-132 (1986).

coercion, compel another to commit any crime, are principals in any crime so committed'').

A practical effect of our statutory changes is to hold the criminal actor who participates in a felony liable as a principal without regard to whether the felony is completed or committed by another.[6] See 1 C. Torcia, Wharton's Criminal Law § 35, at 202-203 (15th ed. 1993) (''The person who aids, abets, commands, counsels, or otherwise encourages another to commit a crime is still regarded as a party to the underlying crime as at common law, even though the labels principal in the first degree, principal in the second degree, and accessory before the fact are no longer used, and even though it usually does not matter whether the aider and abettor is or is not present at the scene of the crime'').

What has been set forth is settled criminal law, but, as we shall discuss momentarily, one part of the instruction on joint participation on the February 19 trafficking charge was not correct. A judge need charge on the defendant's presence at the scene of a crime in a prosecution proceeding on a joint participation theory only to the extent that the factor has legal significance. As to the February 19 trafficking charge, the factor could have been omitted altogether, or referred to briefly to let the jury know that the defendant's presence at the consummation of the sale was unnecessary to convict her as a principal so long as the jury found that she had actually associated herself with the criminal venture and assisted in

---

[6]A criminal law treatise sets out one of the policy reasons behind the modern rule in the following descriptive terms:

> ''One of the greatest social menaces of the present day is the one who would be termed an accessory before the fact by the common law but in lay language is referred to as the 'brains' of a crime ring. He tends to put crime on a 'business basis,' he recruits members of the 'profession,' he provides the means by which crimes are perpetrated on an elaborate scale, and weapons so that death will result from any interference with his plans. The guilt of his terrified underlings, who carry out his commands because they dare not disobey, is certainly no greater than his. And it will not promote the general scheme of social discipline to handicap the prosecution of such an offender by unreasonable obstacles.''

R.M. Perkins & R.N. Boyce, Criminal Law 764 (3d ed. 1982).

making it a success.[7] On the other hand, if a defendant is present at the crime's commission, but denies participation, or knows that a crime is planned, but does not aid, assist, or encourage it, the jury should be instructed that mere presence coupled with the failure to take affirmative steps to prevent the crime is insufficient, as is simple knowledge that a crime will be committed, even if evidence of such knowledge is supplemented by evidence of subsequent concealment of the completed crime. *Commonwealth* v. *Raposo*, 413 Mass. 182, 185 (1992).

We now return to the February 19 trafficking charge. The judge instructed the jury that, to be convicted on this charge as a joint participant, the defendant had to be present at the drug sale. The instruction has led to the defendant's argument that the judge's mention of the presence factor requires reversal. We do not agree. The indictment charges trafficking in general terms,[8] and there is no doubt that the defendant knew, both before trial and as the Commonwealth's evidence was being presented, that she was being prosecuted as a joint participant in a plan to commit a felony that did not require her presence at the drug sale for conviction. The defendant's motion for a required finding of not guilty was stated in nonspecific terms and was properly denied because, at the time the motion was made, the Commonwealth's proof was

---

[7] A sample instruction that is satisfactory in this regard is Instruction 5.05 of the Model Jury Instructions for Use in the District Court (1989). Although this sample instruction was criticized in *Commonwealth* v. *Lafayette*, 40 Mass. App. Ct. 534, 540-541 n.7 (1996), for failing to refer to the factor of presence, we think the instruction could be properly given in a case like this. See *Commonwealth* v. *Claudio*, 418 Mass. 103, 111 n.5 (1994).

[8] Indictment no. 93934 reads as follows:

"THE JURORS for the Commonwealth of Massachusetts on their oath present that: MARIA ORTIZ of BROCKTON in the COUNTY of PLYMOUTH, on or about February 19, 1993, at BROCKTON in the COUNTY of PLYMOUTH did traffick in COCAINE or any salt or mixture thereof by knowingly or intentionally manufacturing, distributing or dispensing, or possessing with intent to manufacture, distribute or dispense, or did bring into the Commonwealth a quantity of COCAINE or any salt or mixture thereof, with a net weight of Fourteen Grams or more, but less than Twenty-Eight Grams."

more than sufficient to establish the defendant's culpability as an originator of the felony in which "Junior" was used as the deliveryman. After the judge's charge, the defendant's counsel made no comment to the judge on the reference to the presence factor in the joint participation instructions, leaving the point to be pressed for the first time on appeal. The judge's instructions on the knowledge and participation elements of joint participation were correct, and shortly after briefly reciting the elements of joint venture, the judge expanded upon the earlier "presence" instruction by telling the jury that "[t]he Commonwealth is not required to show that the [d]efendant physically participated in the actual sale, but it must show that the [d]efendant somehow participated in the venture, the plan, to the extent that she sought to make it succeed." Based on the evidence, the jury undoubtedly knew that the defendant was not present when the February 19 transaction was consummated. The jury found that she was deeply implicated in that transaction and the other sales. Thus, the jury concluded by their verdicts that the defendant was an active distributor of cocaine on seven different occasions, each transaction escalating her culpability as larger amounts of cocaine were requested and supplied. The defendant's argument is governed by the substantial risk of a miscarriage of justice test, and we conclude that there is no such risk.

2. The defendant's two remaining arguments lack substantial merit. (a) The chain of custody as to the cocaine purchased on February 19 and 26, was established at trial by Sergeant LeGrice. Sergeant LeGrice also was properly allowed to testify to identifying marks that were placed in his presence on the various bags of cocaine by the detectives who were in charge of cataloging them, and he testified that the bags contained the cocaine he had purchased. See P.J. Liacos, Massachusetts Evidence § 11.3, at 657 (6th ed. 1994). Any argument that the defendant may have had with Sergeant LeGrice's authentication testimony concerned the "weight and credibility of the evidence, a matter wholly within the province of the jury." *Commonwealth* v. *Martino*, 412 Mass. 267, 272 (1992).

(b) The defendant's argument with respect to "sentencing entrapment" is foreclosed by the discussion in *Commonwealth* v. *Garcia*, 421 Mass. 686, 692-693 (1996), where we rejected

the argument that this theory should be considered by a fact finder in deciding whether the defendant was induced by the police to sell the larger amounts that would render her guilty of trafficking in cocaine.

The judgments of conviction on indictment nos. 93934 and 93936 are affirmed.

*So ordered.*