## COMMONWEALTH *vs.* MICHAEL IRVING.

No. 99-P-181.

Bristol. February 5, 2001. - April 9, 2001.

Present: ARMSTRONG, C.J., BROWN, DREBEN, RAPOZA, & GRASSO, JJ.

*Joint Enterprise. Evidence,* Joint enterprise, Hearsay, Prior misconduct. *Constitutional Law,* Confrontation of witnesses. *Assault by Means of a Dangerous Weapon. Practice, Criminal,* Agreement between prosecutor and witness.

At the trial of a defendant for armed robbery, the judge correctly admitted in evidence the extrajudicial statement of a joint venturer made in the course of and in furtherance of the enterprise. [289-291]

At the trial of an indictment for armed robbery, evidence of the defendant's prior involvement with drugs was properly admitted, with appropriate limiting instructions, to establish motive for the robbery. [291-292]

At the trial of indictments, the evidence was sufficient to warrant a guilty verdict on a charge of assault by means of a dangerous weapon on a theory of joint venture, where the defendant knew that his coventurers were armed. [293-294]

At a criminal trial, there was no error in the Commonwealth's eliciting on direct examination from a witness, a coventurer, details about his plea agreement to provide "truthful, complete and accurate" testimony, and in introducing a redacted transcript of the plea colloquy, where there was no improper vouching for the credibility of the witness and where the judge gave strong limiting instructions. [294-296]

INDICTMENTS found and returned in the Superior Court Department on July 25, 1996.

The cases were tried before *Elizabeth J. Dolan*, J.

*William R. Hill, Jr.*, Committee for Public Counsel Services, for the defendant.

*David Keighley*, Assistant District Attorney, for the Commonwealth.

GRASSO, J. Following jury trial, the defendant was convicted as a joint venturer of masked armed robbery and assault by means of a dangerous weapon. On appeal, he claims that the trial judge erred (1) in admitting statements made by one co-

venturer to another that inculpated the defendant; (2) in denying his motion in limine to exclude evidence concerning the defendant's prior bad acts, including the sale and use of narcotics; and (3) in denying a motion for a required finding of not guilty on so much of the indictment as alleged assault by means of a dangerous weapon.[1] He also claims error in the prosecutor's eliciting, during direct examination, testimony from a coventurer about his plea agreement with the government to provide "truthful" testimony and in the trial judge's admission of the plea agreement in evidence. There being no error, we affirm the defendant's convictions.

From the evidence introduced at trial, the jury could have found the following facts. The Commonwealth's cooperating witness, Mark Delano, an admitted drug abuser, was dismissed from his job as an engineer at the Holiday Inn in Mansfield a few days before the Memorial Day weekend in 1994. Delano had not been able to sustain his drug habit, which cost him as much as $200 per day, from his earnings at the hotel. He had, therefore, stolen from the hotel, taking items such as food and bedding, and engaging in fraud using hotel checks. Delano's drug of choice was cocaine.

Following his dismissal, Delano contacted the defendant, from whom he had purchased drugs in the past. Within a short time, he began living in the defendant's apartment. Delano and the defendant used cocaine together regularly. When Delano could no longer pay for the cocaine, the defendant continued to provide it to him, sometimes in exchange for Delano's assisting the defendant in selling cocaine. Delano would help the defendant by answering the door and delivering packages in exchange for paying off his drug debt. Soon, Delano had run up a debt to the defendant both for day-to-day living expenses and for cocaine.

By August of 1994, the defendant had become concerned about the money Delano owed him and began pressing for payment. The defendant told Delano that he was shut off; the defendant would not supply him with any more cocaine until he had settled his drug debt. Desperate for cocaine, Delano began

---

[1]The judge allowed the motion for a required finding of not guilty as to so much of the indictment as alleged battery.

to look for a way to pay off his debt and reopen his drug supply. Thus, Delano conceived a plan to rob his former employer, the Holiday Inn.

Based on his past employment, Delano knew that the hotel's receipts often were large, consisting of a good deal of cash. Delano also knew that each weekday morning a designated individual made a deposit of the previous day's receipts. He determined that the robbery itself would not be difficult, but there was a risk that he or his distinctive car, a blue Pontiac Grand Prix, would likely be recognized. Thus, disguise and some accomplices would be necessary.

Delano discussed his plan with the defendant, telling him that he had found a way to settle his debts. The two discussed the idea for the next several days, spending considerable time working out the details. As the plan progressed, the defendant, who was also in need of cash, took more control of the planning. In particular, the defendant determined that a gun should be used to motivate the employee to part with the receipts more readily.

The defendant obtained another car, color red, to use in the robbery, and recruited his girlfriend, Michelle DiNicola, and another of his drug customers, David Reed, to participate in the crime. On the night of August 14, 1994, Reed, Delano, DiNicola, and the defendant met at the defendant's apartment to finalize plans for the robbery. Over the course of the night, they rehearsed that Reed would drive the red car to the hotel with Delano and wait for the employee to leave with the deposits. Then Delano would jump from the car, commit the robbery, and escape with Reed. The defendant and DiNicola would wait in Delano's blue Grand Prix a short distance away. When Reed and Delano arrived, they would switch cars, putting the money in the blue Grand Prix to ensure that if the red car were stopped, the money would not be found. The defendant also agreed to switch license plates on the red car prior to driving off in it.

One sticking point remained in the plan. Delano did not wish to use a weapon in the robbery, believing this unnecessary. The defendant disagreed and urged Delano to carry a gun. Delano was adamant. After lengthy discussion, a compromise was reached. Delano agreed to carry a tire iron, not a gun, and communicated this to the defendant.

The robbery began as planned. The defendant and DiNicola parked Delano's blue Grand Prix at the predetermined location, while Delano and Reed drove the red car to the hotel to await the victim. Delano disguised himself with a long-sleeved shirt (to cover his tattoos), a hat, sunglasses, and something to cover his neck and face below the eyes.

While Delano and Reed waited for the employee to appear, Reed got cold feet, deciding that he no longer wished to participate in the venture. He left Delano in the red car and walked in the direction where the defendant and DiNicola were parked. Delano remained, intending to carry through with the robbery.

About thirty minutes later, Delano saw Reed and the defendant drive up in Delano's blue Grand Prix. Reed got out of the passenger side and got back into the red car with Delano. The defendant waited until Reed got into the driver's seat before driving off.

Reed told Delano that the defendant had convinced him to continue with the original plan. In Reed's words, the defendant had told him it would be stupid for Reed to abandon Delano at the scene before the robbery. Reed related that the defendant had told him it was crucial that they finish what they had started.

The robbery then proceeded essentially as planned. Delano jumped out of the car, ran up behind the employee, and demanded that she give him the money. She dropped one of the moneybags and began running, with Delano in pursuit. He ran after her, brandishing the tire iron. She dropped the remaining two money bags and ran away. After retrieving all the bags, Delano jumped into the red car and drove off with Reed for the prearranged rendezvous with the defendant and DiNicola. The participants divided the approximately $20,000 taken. DiNicola received $1,000 and Reed $2,000, with Delano and the defendant splitting the rest. However, the defendant demanded that Delano give him $4,000 of Delano's share in settlement of his debt for rent and drugs.

The denouement did not occur until July of 1995, when the defendant was arrested. He initially denied knowledge of the robbery, only gradually beginning to discuss certain aspects of

the crime as it became clear that Reed and Delano had implicated him.

1. *A coventurer's statements.* The defendant argues that the judge erred in admitting, over objection, Delano's testimony at trial concerning his conversation with Reed on the morning of the robbery. In particular, he complains that the judge should have precluded Delano from testifying as to Reed's statement that the defendant had encouraged him to return to the robbery scene and see the crime through to the end. The defendant contends that Reed's statement was inadmissible hearsay that violated his constitutional right to confront and cross-examine Reed, who was unavailable at trial having invoked his Fifth Amendment privilege against self-incrimination. There was no error.

It is well settled in Massachusetts that the extrajudicial statements of joint venturers may be admissible against the others involved if the existence of the joint venture has been proven by other evidence independent· of the questioned statements. *Commonwealth* v. *Beckett*, 373 Mass. 329, 339-340 (1977). *Commonwealth* v. *Bongarzone*, 390 Mass. 326, 340 (1983). "An extrajudicial statement of a joint venturer may be admitted against a criminal defendant if (a) the statement was made during the course of and in furtherance of a common criminal enterprise and (b) there is sufficient nonhearsay evidence to establish an adequate probability that the declarant and the defendant were engaged in the criminal enterprise." *Commonwealth* v. *Nascimento*, 421 Mass. 677, 680-681 (1996). "The joint venture provides a commonality of interests because of which the statements bear indicia of reliability." *Commonwealth* v. *Collado*, 426 Mass. 675, 681 (1998). "The admission of statements by a joint venturer also does not violate a defendant's right to confrontation." *Ibid.* See *Bourjaily* v. *United States*, 483 U.S. 171, 182-183 (1987).

The defendant argues, variously, that there was insufficient evidence, independent of the challenged statement, to support the existence of a joint venture; that the challenged statement by the defendant to Reed was not in furtherance of the joint venture; and that Reed's description of the defendant's statement to him contained inadmissible totem pole hearsay. None of these contentions has merit.

"Where the issue is the *admissibility* of a [joint venturer's] statement the Commonwealth need only establish by a preponderance of the independent evidence that the defendant was involved in the [joint venture]" (emphasis original). *Commonwealth* v. *McLaughlin*, 431 Mass. 241, 246 (2000). See *Commonwealth* v. *Cruz*, 430 Mass. 838, 844 (2000).[2] Here, there was abundant evidence of the existence of a joint venture between and among Delano, Reed, and the defendant. The defendant participated extensively in developing and refining the original robbery plan formulated by Delano. He recruited DiNicola and Reed to participate; he arranged for the red car to serve as the switch car; he agreed to participate in driving the switch car and changing the license plates; he insisted that a gun be used; he drove Reed back to the scene of the robbery; and he participated in the post-robbery escape, concealment, and division of the proceeds.

That the contested statement was made "during the pendency of the cooperative effort and in furtherance of its goal," *Commonwealth* v. *Colon-Cruz*, 408 Mass. 533, 543 (1990) (citation omitted), is also beyond dispute. Reed had left the red car expressing his intention to abandon the venture. Appearing a short time later with the defendant, Reed announced to Delano that he had decided to rejoin the venture at the defendant's urging and took a place in the driver's seat. This signaled to Delano that the original robbery plan was back in effect. Moreover, by ascertaining that Reed remained involved in the plan, the defendant increased the likelihood of Delano's completion of the robbery.

The defendant maintains that Reed's statement to Delano about what the defendant said constituted totem pole hearsay requiring an exception for each statement: the defendant's to Reed and Reed's to Delano. It is not manifest that Reed's statement to Delano of what the defendant had told him (that it would be stupid to abandon the venture before its completion)

---

[2]The Commonwealth must first show "an adequate probability of the existence of the common venture, including participation by the given defendant." *Commonwealth* v. *White*, 370 Mass. 703, 709 n.7 (1976). "Adequate probability" means that the Commonwealth must satisfy the judge by a preponderance of the evidence. *Commonwealth* v. *Cruz*, 430 Mass. at 844.

is hearsay. The statement may be viewed as being offered not for its truth, but as an "operative" statement, signifying Reed's rejoining the enterprise[3] and affirming the continued existence of a joint venture among Reed, Delano, the defendant, and DiNicola, see *Commonwealth* v. *McLaughlin,* 431 Mass. at 246, or as a "verbal act" explaining the defendant's act of driving Reed back to the robbery scene. Liacos, Massachusetts Evidence § 8.2.5. See *Commonwealth* v. *Wallace,* 346 Mass. 9, 13-14 (1963).[4]

Even if we were to hold that the judge erred in admitting the statements, given the abundance of evidence of the defendant's involvement in the joint venture, we would affirm the convictions because any such error was "harmless beyond a reasonable doubt." *Commonwealth* v. *Perez,* 411 Mass. 249, 260 (1991). See *Commonwealth* v. *Rosario,* 430 Mass. 505, 511 (1999).[5] Apart from Delano's challenged testimony, there was overwhelming evidence of the defendant's guilt: the testimony was cumulative of other evidence detailing the defendant's participation in the joint venture, and the defendant's statement to Reed "supplied no missing element in the proof of the crime." See *Commonwealth* v. *Lenahan,* 50 Mass. App. Ct. 180, 185 (2000).

2. *Prior bad acts.* The defendant next contends that the trial judge erred in denying his motion in limine to exclude from evidence any testimony that the defendant either sold or used drugs. He argues that such testimony lacked probative value and served only to prejudice the jury. He also contends that

---

[3]Matters surrounding the history of the enterprise, including statements of joint venturers, may be admissible even if they predate the joint venture. See *Commonwealth* v. *Rankins,* 429 Mass. 470, 474 (1999).

[4]We need not decide whether all statements by one venturer to another about what a third venturer has said in furtherance of the venture come within the joint venture exception. On the facts of this case, Delano's testimony concerning Reed's statement about what the defendant said is admissible. See *United States* v. *Smith,* 790 F.2d 789, 795 (9th Cir. 1986) (coventurer's testimony that another venturer had told him that the defendant "needed somebody that wanted to counterfeit money" properly admissible).

[5]Analysis of whether an *error* is harmless beyond a reasonable doubt, or is nonprejudicial, or creates a substantial risk of a miscarriage of justice only occurs if *error* was committed. As we have noted, even under the more stringent standard, the error was harmless.

defense counsel's failure to make a timely objection when this evidence was introduced at trial created a substantial risk of a miscarriage of justice.

Evidence of a defendant's prior bad acts is not admissible to show that the defendant has a criminal propensity or is of a bad character. See *Commonwealth* v. *Imbruglia,* 377 Mass. 682, 695 (1979); *Commonwealth* v. *Gunter,* 427 Mass. 259, 262 (1998); *Commonwealth* v. *Stephens,* 15 Mass. App. Ct. 461, 466 (1983). However, the defendant's prior bad acts may be admitted to show knowledge, intent, motive, opportunity, or absence of mistake or accident. See *Commonwealth* v. *Imbruglia, supra* at 695; *Commonwealth* v. *Barrett,* 418 Mass. 788, 793-794 (1994); *Commonwealth* v. *Gunter, supra* at 263.

Here, the trial judge properly admitted evidence of the defendant's involvement with drugs, both as seller and user, because it depicted the relationship between the defendant and Delano and established motive for both Delano and the defendant to commit the robbery. Delano had amassed a debt to the defendant for rent and drugs. Until he settled his debt, the defendant would not supply him with any more cocaine. Likewise, the defendant was under financial strain due to his own considerable drug use and his having allowed Delano to buy drugs on credit and live with him. The defendant needed money to supply his own habit.

Evidence of the defendant's drug dealing was also admissible as being "inextricably intertwined with the description of events on the [day] of the [robbery]." *Commonwealth* v. *Gunter,* 427 Mass. at 263, quoting from *Commonwealth* v. *Bradshaw,* 385 Mass. 244, 269 (1982). The trial judge was within her discretion in determining that the probative value of the evidence outweighed any prejudicial impact. See *Commonwealth* v. *Bradshaw, supra* at 270. Moreover, she gave appropriate limiting instructions as to the use which could be made of this testimony. See *Commonwealth* v. *Johnson,* 45 Mass. App. Ct. 473, 479 (1998). Having failed in his motion in limine to exclude this evidence, defense counsel should have objected to its introduction at trial to preserve the issue for appellate review. See *Commonwealth* v. *Whelton,* 428 Mass. 24, 25 (1998). The admission of the prior bad acts evidence was proper and, a fortiori, did not create a substantial risk of a miscarriage of justice.

3. *Denial of motion for required finding of not guilty.* At the close of the Commonwealth's case, the defendant moved for a required finding of not guilty on the indictment charging assault and battery by means of a dangerous weapon. Because there was no evidence of a touching of the victim, the trial judge allowed the motion in part, leaving the lesser included offense of assault by means of a dangerous weapon. The defendant argues that the evidence was insufficient to sustain this indictment because Delano never communicated to the defendant that he planned to use a tire iron in the robbery.

The trial judge did not err in denying the defendant's motion for a required finding of not guilty on so much of the indictment as alleged assault by means of a dangerous weapon. We review the denial of the defendant's motion under the familiar standard set forth in *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). A defendant can be convicted as a joint venturer if he was "(1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary." *Commonwealth* v. *Ortiz*, 424 Mass. 853, 856 (1997), quoting from *Commonwealth* v. *Longo*, 402 Mass. 482, 486 (1988). Joint venture liability is also established when the defendant aids in the commission of a felony or is an accessory before the fact. See *Commonwealth* v. *Ortiz*, *supra*; *Commonwealth* v. *Sim*, 39 Mass. App. Ct. 212, 216 (1995). Here, there was sufficient evidence to find the defendant guilty of assault by means of a dangerous weapon as a joint venturer.[6]

A jury could have found that the defendant had remonstrated that a weapon was necessary to the success of the undertaking. There was also evidence from which the jury could have concluded that while Delano refused to carry a gun as suggested, he opted to carry a tire iron and communicated this decision directly to the defendant. That Delano chose to use a

---

[6]We need not decide whether the defendant's waiting in the switch car a short distance from the location of the robbery constitutes "presence" at the scene. Here, the defendant's planning and assistance in execution of the robbery furnishes a clear basis for culpability. See *Commonwealth* v. *Ortiz*, *supra*; *Commonwealth* v. *Sim*, *supra*.

tire iron rather than a gun does not detract from the defendant's possession of the requisite mental state and knowledge that Delano would be armed in the course of the robbery. An agreement between joint venturers need not be express. See *Commonwealth v. Soares*, 377 Mass. 461, 470, cert. denied, 444 U.S. 881 (1979) ("The jury may infer the requisite mental state from the defendant's knowledge of the circumstances and subsequent participation in the offense"). It is sufficient that the defendant knew that his coventurers were armed. See *Commonwealth v. Melendez*, 427 Mass. 214, 215-216 (1998).

4. *Witness testimony pursuant to a plea agreement.* On direct examination and without objection, the Commonwealth questioned Delano generally about his plea agreement with the government, including his agreement to give "truthful, complete and accurate testimony." The Commonwealth also introduced a redacted transcript of Delano's plea colloquy. The defendant now complains that eliciting this testimony and introducing the plea agreement during Delano's direct examination, rather than upon redirect, violated the holdings of *Commonwealth v. Ciampa*, 406 Mass. 257, 261-266 (1989), and *Commonwealth v. Rivera*, 430 Mass. 91, 95-98 (1999). The trial judge did not err in admitting Delano's testimony or the redacted plea colloquy, and in any event, there was no substantial risk of a miscarriage of justice. See *Commonwealth v. Colon*, 408 Mass. 419, 443-444 (1990).

*Commonwealth v. Ciampa*, 406 Mass. at 261, sets forth the general proposition that "testimony pursuant to a plea agreement, founded on a promise of truthful cooperation, and the plea agreement itself are admissible." The court in that case also recognized that when the government has entered into an agreement with a witness that requires truthful testimony, there is risk that a jury might erroneously conclude that the government has a special ability to determine whether or not the witness is in fact telling the truth when he testifies. *Id.* at 260-261. See *Commonwealth v. Dixon*, 425 Mass. 223, 233 (1997); *Commonwealth v. Rivera*, 430 Mass. at 95-96. To avoid the appearance of vouching by the prosecutor, *Ciampa* counsels steering the course between Scylla and Charybdis by deferring efforts to bolster the witness with questions concerning his obligation to

tell the truth until redirect examination. See *Commonwealth* v. *Ciampa*, *supra* at 264. Deferring such questions is said to be obligatory, not merely advisory. See *Commonwealth* v. *Rivera*, 430 Mass. at 96-97.

In the circumstances confronting the prosecutor at the time of Delano's testimony, there was no premature bolstering or vouching for Delano's credibility. Opening statements had made clear that the credibility of Delano would be central to the prosecution and defense cases. Defense counsel's opening had emphasized that the defense would challenge Delano's credibility on cross-examination and emphasize his motive for fabrication based upon his plea agreement with the Commonwealth. Moreover, prior to any testimony from Delano, the trial judge admonished the jury in the strongest terms to examine the testimony given pursuant to the plea agreement with "extra care and caution," and that "any reference to . . . truthfulness in a plea agreement does not mean that the government or the Office of the District Attorney has any way of knowing whether the witness is telling the truth."[7]

The prosecutor did not dwell on Delano's obligation to testify truthfully as part of the plea agreement. He merely brought out the fact that Delano had entered into a plea agreement and generally understood his obligations under it, touching only cursorily on Delano's obligation to testify truthfully. See *Commonwealth* v. *Ciampa*, 406 Mass. at 264. As both the defendant's opening statement and the judge's cautionary instructions placed Delano's credibility and the plea agreement in stark relief, to have required the prosecutor to await redirect examination to first address the issue would have likely confused the jury.

The trial judge was also careful in admitting the plea agreement itself, redacting prejudicial and irrelevant provisions. See *Commonwealth* v. *Ciampa*, 406 Mass. at 261. Admission of the redacted agreement during direct examination was permissible in the judge's discretion, as it was clear from opening state-

---

[7]The trial judge repeated these admonitions in her final instructions to the jury. See *Commonwealth* v. *Meuse*, 423 Mass. 831, 832 (1996).

ments that the defendant would challenge Delano's credibility on cross-examination. *Id.* at 264.

*Judgments affirmed.*