RYAN MARSHALL *vs.* COMMONWEALTH.

Suffolk. March 8, 2012. - October 15, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Homicide. Accessory and Principal. Constitutional Law,* Double jeopardy. *Practice, Criminal,* Capital case, Double jeopardy.

This court concluded that where the evidence at a criminal trial had been insufficient to warrant a finding of guilt on an indictment charging the defendant with being an accessory before the fact to murder in the first degree, in violation of G. L. c. 274, § 2, and the defendant's conviction had been vacated, a subsequent prosecution for murder in the first degree did not violate the prohibition against double jeopardy [533-535, 537-539], even where certain jury instructions given at the previous trial had been erroneous and evidence erroneously had been admitted [539-540].

Discussion of this court's recent decisions regarding the scope of accomplice (or joint venture) liability for criminal offenses. [535-537]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on April 7, 2011.

The case was reported by *Duffly*, J.

*Richard J. Fallon* for the defendant.

*Shoshana E. Stern*, Assistant District Attorney, for the Commonwealth.

CORDY, J. In February, 2006, a jury convicted Ryan Marshall (defendant) of being an accessory before the fact to murder, G. L. c. 274, § 2 (§ 2),[1] on an indictment alleging that he, "before the said felony was committed, did incite, procure, aid, counsel, hire or command that" four named men murder George R. Carpenter. Although the evidence at trial was sufficient to establish that the defendant had participated in the murderous assault, we reversed his conviction in *Commonwealth* v. *Rod-*

[1]General Laws c. 274, § 2, provides: "Whoever aids in the commission of a felony, or is accessory thereto before the fact by counselling, hiring or otherwise procuring such felony to be committed, shall be punished in the manner provided for the punishment of the principal felon."

*riguez,* 457 Mass. 461, 482-488 (2010) (*Rodriguez*), because the evidence did not establish that he had done any act before the assault to counsel, hire, or otherwise procure it.

Thereafter, the Commonwealth sought and the grand jury returned an indictment charging the defendant with murder for his involvement in the killing. See G. L. c. 265, § 1. The defendant moved to dismiss the indictment, arguing that, because "murder is a form or a 'species' of lesser included offense to accessory before the fact to murder," a second prosecution was barred by double jeopardy.[2] A judge (who was not the trial judge) denied the motion.

Pursuant to G. L. c. 211, § 3, the defendant sought relief from this order from a single justice of the county court, who reserved and reported the following questions:

> "(1) [Whether] where the evidence is insufficient to warrant a finding of guilt on an indictment charging a defendant with being an accessory before the fact to murder in the first degree, see G. L. c. 274, § [2], and the defendant's conviction was vacated,[3] a subsequent prosecution for murder in the first degree under that statute would violate the prohibition against double jeopardy; and (2) [Whether] in the circumstances of this case, given the erroneous jury instructions and the erroneously admitted evidence, prosecution of this defendant for murder in the first degree is barred on grounds of double jeopardy?"

We answer both questions in the negative.

*Background.* 1. *Evidence at trial.* We summarize the facts from the court's opinion in *Rodriguez, supra* at 463-466. In the early morning hours of February 16, 2001, the victim was drinking and socializing with friends at the home of Donna Medeiros, the defendant's mother. The defendant, his girl friend,

---

[2]The defendant also alleged that the successive and multiple prosecutions constituted harassment by the Commonwealth because the original charge of accessory before the fact was sought to eliminate the possibility that he would receive a lesser manslaughter verdict on a murder indictment.

[3]In *Commonwealth v. Rodriguez,* 457 Mass. 461, 487-488 & n.34 (2010) (*Rodriguez*), we reversed, rather than vacated, the defendant's conviction because he could not be retried as an accessory before the fact. The indictment was dismissed by the Superior Court.

and three friends, Robert Tirado, Jonathan Torres, and Heather Lawrence, arrived at the home shortly thereafter.

At some point, an argument ensued between the victim, the defendant, and Tirado. The confrontation between the victim and Tirado continued down the street from Medeiros's home, where Tirado slashed the tire of the victim's automobile as the victim attempted to leave the gathering. The violence escalated when the defendant, Torres, and three more of the defendant's friends, Lionel Rodriguez, Orlando Badillo, and Dennis Smith, arrived at the scene. With the exception of Torres, Tirado and these men attacked the victim. One man struck the victim with a tire iron. The defendant kicked him twice and attempted to throw a trash barrel on him. The victim was rendered unconscious by the beating, and he died later that day as a result of acute massive intra-abdominal hemorrhage due to blunt force trauma.

2. *Prior proceedings.* For his involvement in the killing, the defendant was indicted as an accessory before the fact to murder in the first degree and was tried with Rodriguez, who had been indicted for murder in the first degree.[4] At trial, the Commonwealth proceeded on the theory that the defendant did "aid" Tirado, Badillo, Smith, and Rodriguez in committing the murder, the prosecutor having conceded that there was no evidence the defendant had counselled, hired, or otherwise procured the felony. The judge, concluding that "[a]ccessory before the fact to felony is largely identical to the joint venture doctrine," accepted this theory. Consequently, at the close of evidence, he told the jury:

> "To prove the defendant guilty of being an accessory before the fact to murder, the Commonwealth must prove the following three things beyond a reasonable doubt. Element number one, that someone other than the defendant committed a felony; namely, murder. Element number two,

---

[4]As we explained in *Rodriguez, supra* at 462 n.4, Robert Tirado, Orlando Badillo, and Dennis Smith also were charged with murder in the first degree for their involvement in the killing, while Jonathan Torres (like the defendant) was indicted as an accessory before the fact to murder. The cases were paired for trial: "Tirado and Torres were tried first; Tirado was convicted of murder in the second degree, and Torres was acquitted. After being tried together, both Badillo and Smith were convicted of murder in the second degree." *Id.*

that [the defendant] aided in the commission of the felony. And element number three, that [the defendant] had knowledge that another intended to commit the crime and shared the mental state required for the commission of the particular felony being questioned."

With regard to the second element, the judge told the jury that "the Commonwealth must prove that [the defendant] did assist in the commission of the felony," meaning that the defendant "intentionally participated in some meaningful and significant way by agreeing to stand by, at or near the scene, to render aid, assistance, or encouragement if such became necessary." Aside from a brief statement at the start of the instruction, the judge did not elaborate on the temporal element inherent in the offense of being an accessory *before* the fact to murder.[5] The jury found the defendant guilty on the indictment of being an accessory before the fact to murder in the first degree on a theory of extreme atrocity or cruelty.[6]

We reviewed the defendant's conviction in *Rodriguez, supra* at 482-487, and concluded that the language of the indictment, although prescribed by statute, see G. L. c. 277, § 79,[7] improperly conflated the offense of being an accessory before the fact to a felony with that of aiding and abetting a felony, an offense also included within § 2 (see note 1, *supra*). *Rodriguez, supra* at 482-485. That is, we construed § 2 as articulating two "separate and distinct offenses" — aiding a felony and being

---

[5]The judge told the jury: "The phrase 'before the fact' refers to time. The defendant . . . is accused of having been an accessory to a felony before that felony was committed."

[6]The jury also found Lionel Rodriguez, with whom the defendant had been tried, guilty of murder in the first degree, on a theory of extreme atrocity or cruelty. On appeal, we reduced this conviction to murder in the second degree because, although other properly admitted evidence established that Rodriguez had committed an unlawful killing, certain medical evidence and testimony pertinent to the theory of extreme atrocity or cruelty was erroneously admitted. *Rodriguez, supra* at 475-482.

[7]General Laws c. 277, § 79, provides in relevant part that the annexed form of an indictment alleging "that A.B., before the said felony was committed, did incite, procure, aid, counsel, hire or command the said (principal) the said felony to do and commit," shall be "sufficient" to allege the crime of accessory before the fact. See *Commonwealth* v. *Daughtry*, 417 Mass. 136, 141-142 n.3 (1994).

an accessory before the fact to a felony[8] — and faulted the Commonwealth for "improperly defin[ing] the offense on which [the defendant] was tried." *Id.* at 485, 486. We noted that, although this error in the wording of the indictment "may have been excusable on account of adherence to the statutory form . . . , the judge [also] submitted the case to the jury with improper instructions." *Id.* at 486-487. As detailed above, the judge had instructed the jury that they could convict the defendant "as an accessory before the fact if he 'aided in the commission of the murder of [the victim].' " *Id.* at 487. That instruction did not comport with the form of the indictment, which alleged that the defendant acted *before* the commission of the felony, even though it tracked the evidence at trial, which had established his "active participation in, and presence during, the commission of the felony." *Id.* Consequently, we determined that the defendant's conviction of being an accessory before the fact to murder could not stand. *Id.*

*Discussion.* The defendant argues, as he did before the motion judge, that the indictment that charges him with murder in the first degree[9] violates the prohibition against double jeopardy. Specifically, he contends that murder is akin to a lesser included offense of accessory before the fact to murder[10] and, therefore, the new proceeding against him runs afoul of the familiar maxim that "a prosecution for a greater offense precludes subsequent

[8]Under this rubric, the "aiding" prong (colloquially, "aiding and abetting") captures conduct that constitutes actual assistance in the commission of the felony, and requires some degree of knowing participation. *Rodriguez, supra* at 484. In contrast, the "accessory" prong encompasses participation in an act "that led up to or in some way contributed to the occurrence of the felony," but that occurred prior to the commission of the felony (i.e., "counselling, hiring or otherwise procuring" it). *Id.*

[9]This indictment alleges that the defendant, "on or about February 16, 2001 . . . did assault and beat George Carpenter with intent to murder him, and by such assault and beating did kill and murder the said George Carpenter." Although this indictment does not state explicitly that the Commonwealth will proceed on an aiding and abetting theory against the defendant, statements made in the Commonwealth's brief, as well as the approach adopted and the evidence presented in the first trial, plainly support the conclusion that it will.

[10]The defendant reaches this conclusion by arguing that, under the statutory scheme, "everyone guilty as an accessory before the fact is also guilty of the felony, but not vice versa . . . . Put another way . . . murder is 'necessarily accomplished' on commission of accessory before the fact to murder."

prosecution for all its lesser included crimes." *Commonwealth* v. *D'Amour*, 428 Mass. 725, 748 (1999), quoting *Costarelli* v. *Commonwealth*, 374 Mass. 677, 683 (1978). We disagree.

At its core, the prohibition against double jeopardy, which flows from the Fifth Amendment to the United States Constitution, as well as the statutory and common law of Massachusetts, provides that "a person cannot twice be put in jeopardy for the same offence." *Commonwealth* v. *Burke*, 342 Mass. 144, 145 (1961), and cases cited. See *Benton* v. *Maryland*, 395 U.S. 784, 794 (1969) (applying Federal constitutional guarantees against double jeopardy to States through Fourteenth Amendment to United States Constitution); *Choy* v. *Commonwealth*, 456 Mass. 146, 147 n.2, cert. denied, 131 S. Ct. 425 (2010); G. L. c. 263, § 7. This principle, however, "is not one rule but several, each applying to a different situation; and each . . . marooned in a sea of exceptions." Note, Twice in Jeopardy, 75 Yale L.J. 262, 263 (1965). Thus, the bar protects against three specific evils — "a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense," *Mahoney* v. *Commonwealth*, 415 Mass. 278, 283 (1993), citing *North Carolina* v. *Pearce*, 395 U.S. 711, 717 (1969) — while tolerating certain conduct from the State. See, e.g., *Ray* v. *Commonwealth*, *ante* 1, 3 (2012), quoting *Arizona* v. *Washington*, 434 U.S. 497, 505 (1978), and *Commonwealth* v. *Steward*, 396 Mass. 76, 78 (1995) ("State and Federal double jeopardy protections bar, 'as a general rule,' retrial of a defendant whose initial trial ends over his objection and without a conviction. . . . However, an exception to the general rule applies where a mistrial is declared as a matter of 'manifest necessity' " [citations omitted]).

From this web of jurisprudence, the defendant has plucked a single strand — that pertaining to greater and lesser included offenses. He recites the governing principle accurately (the State generally *is* prohibited from successive prosecutions for a greater and lesser offense, see *Brown* v. *Ohio*, 432 U.S. 161, 168-169 [1977]; *Edge* v. *Commonwealth*, 451 Mass. 74, 75-76 [2008]), and applies it creatively. But his presentation is ultimately unpersuasive. Murder, prosecuted on a theory of aiding and abetting, is not a lesser included offense of accessory

before the fact to murder. Rather, the two are different species of the same crime.

To elucidate this point, we revisit the *Rodriguez* case, where we concluded that the actions of one who "aids" are different from the actions of "accessories before the fact," and that the different acts constitute "separate and distinct" offenses. *Id.* at 484-486 & n.31. Although grounded in the language and structure of the statute, this construction of § 2 goes too far, and is an outlier among our recent decisions regarding the scope of accomplice (or joint venture) liability. That is, although we drove a theoretical wedge between two forms of accomplice liability in *Rodriguez*, we have renounced elsewhere such "false distinction[s]" that long complicated the doctrine, see *Commonwealth* v. *Zanetti*, 454 Mass. 449, 464 (2009) (*Zanetti*), and put forth instead a practical framework grounded in its "essential elements" of knowing participation and shared criminal intent. *Id.* at 467. See, e.g., *Commonwealth* v. *Ortiz*, 424 Mass. 853, 856-857 (1997) (*Ortiz*). We affirm these prior holdings, and reconsider the relationship between the charge of murder and that of being an accessory before the fact to murder in light of them.

We turn to our decision in *Ortiz*, where we reviewed the common-law origins of accomplice liability, as well as the statutory interventions brought by § 2 and its counterpart, G. L. c. 274, § 3 (§ 3).[11] We explained that, at common law, the parties to a felony fell into one of four classifications — principals in the first or second degree, and accessories before and after the fact. *Ortiz, supra.* These classifications, however, proved untenable, as they "led to numerous procedural difficulties that tended to shield an accessory before the fact from punishment even though the accessory's active criminal involvement in the felony was clearly established beyond a reasonable doubt." *Id.* at 857 & n.5. To remedy these infirmities, the Legislature enacted §§ 2 and 3, which, respectively, made "a joint participant in

[11]General Laws c. 274, § 3, provides in pertinent part: "Whoever counsels, hires or otherwise procures a felony to be committed may be indicted and convicted as an accessory before the fact, either with the principal felon or after his conviction; or may be indicted and convicted of the substantive felony, whether the principal felon has or has not been convicted, or is or is not amenable to justice; and in the last mentioned case may be punished in the same manner as if convicted of being an accessory before the fact. . . ."

the commission of a felony liable to the same extent as the principal felon" and removed certain jurisdictional impediments to prosecuting an accessory without the principal. *Ortiz, supra* at 857, 858 & n.6. Although both provisions "continue[d] to use the term 'before the fact,' " *id.* at 857, the phrase now appears to be a vestige of history, as the statutory changes "abrogate[d] the distinction between principals and accessories before the fact." *Id.*

The import of this statement comes into sharper focus when viewed alongside our 2009 decision in the *Zanetti* case. There, we reformulated the jury instructions governing accomplice liability, formally dispensing with the vocabulary of "joint venture" (which adhered to the classifications described above) in favor of the language of "aiding and abetting" (which focused on the essence of the joint venture allegation, knowing participation in the criminal offense). *Id.* at 467-468. As a result, we crafted a statement of law that hewed more closely to the framework described in the *Ortiz* case: whether cast as a principal or accessory in the past, a defendant may be held liable for a crime if "the Commonwealth has proved beyond a reasonable doubt that the defendant knowingly participated in the commission of the crime charged, alone or with others, with the intent required for that offense." *Zanetti, supra* at 468. Drawing from the substantive law of accomplice liability, we further clarified the scope of this intentional participation in "[a]n appropriate jury instruction":

> "Such participation may take any of several forms. It may take the form of personally committing the acts that constitute the crime, or of aiding or assisting another in those acts. It may take the form of asking or encouraging another person to commit the crime, or helping to plan the commission of the crime. Alternatively, it may take the form of agreeing to stand by at, or near, the scene of the crime to act as a lookout, or to provide aid or assistance in committing the crime, or in escaping, if such help becomes necessary."

*Id.* at 470 (Appendix). Thus, as this instruction recognizes, with §§ 2 and 3 in place, a wide range of conduct underlying a

person's liability for a criminal offense, including that which had historically been described as accessory before the fact to a felony or aiding and abetting a felony, plainly falls under the rubric of accomplice liability, and, consequently, may be charged as the substantive offense.[12] See *Commonwealth* v. *Moure*, 428 Mass. 313, 316-318 (1998) (discussing prosecutor's decision to proceed against defendant as accessory before fact to murder under § 2 rather than directly on substantive felony under § 3 of statute). See also *Commonwealth* v. *Caramanica*, 49 Mass. App. Ct. 376, 381 (2000) (noting that "statutory accessory crimes [i.e., §§ 2 and 3] . . . are often available to prosecutors, but apparently rarely used as a basis for indictment").

It is this last point that controls the case before us. Whether the defendant engages in conduct before the commission of the victim's murder to ensure its accomplishment, aids in its commission by others, or commits the murderous assault himself, he is liable for murder and, if convicted, will be so punished. We cannot say, then, that each is a wholly independent theory of criminal liability. See *Commonwealth* v. *Santos*, 440 Mass. 281, 290 (2003), overruled on other grounds, *Commonwealth* v. *Anderson*, 461 Mass. 616, 633-634 (2012) ("While we sometimes use the term 'theory' of principal liability or 'theory' of joint venture, those are not alternate, differing 'theories' of the crime that are to be subjected to the specific unanimity and verdict slip requirements . . ."). Rather, we recognize the interrelationship among them, and conceptualize them as different routes to the same end: criminal liability as a knowing participant in a crime (here, murder).

With this framework in mind, we return to the potential double jeopardy implications of the second indictment brought against

[12]This outcome is not surprising, as both prongs of G. L. c. 274, § 2, had long been viewed as a unified theory of joint venture liability. See *Commonwealth* v. *Ortiz*, 424 Mass. 853, 856 (1997); *Commonwealth* v. *Soares*, 377 Mass. 461, 470, cert. denied, 444 U.S. 881 (1979) ("The theory underlying joint enterprise is that one who aids, commands, counsels, or encourages commission of a crime while sharing with the principal the mental state required for the crime is guilty as a principal"). See also *Commonwealth* v. *Zanetti*, 454 Mass. 449, 468 (2009) (shift to language of aiding and abetting "does not enlarge or diminish the scope of existing joint venture liability").

the defendant. As noted above, the prohibition against double jeopardy generally forbids a second prosecution for the same offense after conviction or acquittal. See *Mahoney* v. *Commonwealth*, 415 Mass. 278, 283 (1993), citing *North Carolina* v. *Pearce*, 395 U.S. 711, 717 (1969). It does not, however, necessarily bar a retrial where a conviction has been set aside on appeal. See *Hicks* v. *Commonwealth*, 345 Mass. 89, 91 (1962), cert. denied, 374 U.S. 839 (1963), and cases cited ("It has been held repeatedly by this court and by the Supreme Court of the United States that a defendant can be tried a second time for an offence when his prior conviction for that offence has been set aside on his appeal"). See also *United States* v. *Ball*, 163 U.S. 662, 672 (1896) ("a defendant, who procures a judgment against him upon an indictment to be set aside, may be tried anew upon the same indictment, or upon another indictment, for the same offence on which he had been convicted").[13]

This "exception" to the double jeopardy bar is not without its own exceptions. The State, for example, generally cannot retry a defendant "when an appellate court overturns a conviction because of insufficient evidence." K.B. Smith, Criminal Practice and Procedure § 24.57, at 393 (3d ed. 2007). But, it may do so where other theories (supported by evidence at a first trial) would support a defendant's conviction in the second, see *Commonwealth* v. *Fickett*, 403 Mass. 194, 199 n.4 (1988), or where a conviction is reversed on appeal because of a variance between the indictment and the proof established at trial. See *Commonwealth* v. *Ohanian*, 373 Mass. 839, 844 (1977), citing

[13]The United States Supreme Court has explained the origins of this rule succinctly: "At common law a convicted person could not obtain a new trial by appeal except in certain narrow instances. As this harsh rule was discarded courts and legislatures provided that if a defendant obtained the reversal of a conviction by his own appeal he could be tried again for the same offense. Most courts regarded the new trial as a second jeopardy but justified this on the ground that the appellant had 'waived' his plea of former jeopardy by asking that the conviction be set aside. Other courts viewed the second trial as continuing the same jeopardy which had attached at the first trial by reasoning that jeopardy did not come to an end until the accused was acquitted or his conviction became final. But whatever the rationalization, this Court has also held that a defendant can be tried a second time for an offense when his prior conviction for that same offense has been set aside on appeal." *Green* v. *United States*, 355 U.S. 184, 189 (1957), citing *United States* v. *Ball*, 163 U.S. 662 (1896).

G. L. c. 263, § 8 (noting that, although judgments were reversed, verdicts were set aside, and indictments were dismissed due to fatal variance, such disposition did "not bar conviction for the same crimes on new indictments").

We are of the view that the present case falls within the boundaries of these latter two categories. "In general, a crime must be proved as charged and must be charged as proved." K.B. Smith, Criminal Practice and Procedure, *supra* at § 15.40, at 872. Here, however, the indictment specifically charged the defendant with engaging in conduct *"before* the said [murder] was committed" (emphasis added), while the proof at trial established that he joined in the attack by kicking the victim, and the judge's instructions directed the jury to convict the defendant if they found that he had "intentionally participated" in the murderous assault. Although the proof of liability at trial, and the jury instructions that accompanied it, would have sufficed if the defendant had been indicted simply for the murder itself, they were at variance with the wording of the indictment. Although we did not employ this term specifically, we essentially concluded in *Rodriguez, supra* at 487, that such a variance was fatal: the defendant was convicted of a crime for which he had not been indicted. See, e.g., *Commonwealth* v. *Ohanian, supra* at 843; *Commonwealth* v. *Pearson,* 77 Mass. App. Ct. 95, 101-102 (2010). Our ruling on the defendant's appeal in the *Rodriguez* case, then, did not erect a double jeopardy bar to subsequent prosecution for the crime proved at the first trial, and the Commonwealth is entitled to try him again under an appropriate charging instrument. See *United States* v. *Ball, supra*; *Hicks* v. *Commonwealth, supra.*[14]

Although the preceding discussion suffices to address the first reported question, we briefly touch on the second. The single justice asks whether, "in the circumstances of this case, given the erroneous jury instructions and the erroneously admitted evidence [and testimony of the medical examiner], prosecution of this defendant for murder in the first degree is barred on grounds of double jeopardy." The defendant argues that, in

[14]As G. L. c. 274, § 3, expressly provides, one charged with accessory before the fact may be "indicted and convicted of the substantive felony," here, murder.

framing the question as she does, the single justice flags for our consideration the possibility that Massachusetts common and statutory law may provide greater double jeopardy protections than does the Federal Constitution. Although we may have intimated as much on select occasions, see, e.g., *Commonwealth* v. *Vick*, 454 Mass. 418, 433-435 (2009), we never have "intended to erode . . . our well-established and historic scheme for analyzing double jeopardy principles," *Commonwealth* v. *Niels N.*, 73 Mass. App. Ct. 689, 710 (2009) (Cypher, J., dissenting in part), nor do we find cause to depart from them now. As detailed above, we reversed the defendant's first conviction because he was tried and convicted of a crime for which he was not charged. The subsequent indictment, then, does not constitute harassment by way of "multiple and successive prosecutions," compare *Commonwealth* v. *Gallarelli*, 392 Mass. 573, 574 (1977), nor does it amount to an overzealous attempt to obtain "tactical advantage" over the defendant. *Glawson* v. *Commonwealth (No. 1)*, 445 Mass. 1019, 1021 (2005). Rather, it serves as an attempt by the Commonwealth to repeat its initial and successful case under an appropriate charging instrument, an outcome that the guarantees against double jeopardy surely tolerate. See *Commonwealth* v. *Fickett, supra.* See also G. L. c. 263, § 8.

*Conclusion.* For the reasons discussed, we answer both of the reported questions in the negative. The matter is remanded to the single justice for further proceedings consistent with this opinion.

*So ordered.*