**Sinethone MANISY**

v.

**Michael T. MALONEY**

**No. 01–11849–RGS.**

United States District Court,
D. Massachusetts.

Sept. 4, 2003.

Sinethone Manisy, Pro Se.

Annette C. Benedetto, Department of Attorney General, Boston, MA, for Michael T. Maloney.

*MEMORANDUM AND ORDER ON RE-PORT AND RECOMMENDATION ON PETITIONER'S RENEWED MOTION FOR APPOINTMENT OF COUNSEL AND RESPONDENT'S MOTION TO DISMISS*

STEARNS, District Judge.

On December 7, 1995, petitioner Sinethone Manisy was convicted by a jury in the Superior Court jury of being an accessory before and after the fact of an armed robbery. On November 7, 2001, Manisy filed a timely petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254.[1] As grounds for his petition, Manisy asserted: (1) that juror misconduct denied him the right to a fair and impartial verdict; (2) that his conviction was obtained "by the use of improper non-probative prejudicial evidence of prior bad acts and bad character;" and (3) that he was denied the right to effective assistance of counsel because of his lawyer's mishandling of various evidentiary issues. The respondent, in due course, moved to dismiss the petition in its entirety, and the proceeding was referred to Magistrate Judge Dein. In her Report, the Magistrate Judge recommended that the motion to dismiss be allowed as to the second and third claims, but denied as to the claim of juror misconduct.[2] While I agree with the Magistrate Judge's recommendation that the second and third claims be dismissed, I am of the view that the juror misconduct claim is barred by a procedural default and must therefore be dismissed as well.

## BACKGROUND

Manisy was indicted by a state grand jury as a principal in a December 29, 1994 armed robbery, and as an accessory before and after the fact of the same crime. In November of 1995, the case proceeded to trial before a petit jury. At the close of the evidence, the court granted Manisy's motion for a required finding of not guilty on the armed robbery charge. On Decem-

ber 7, 1995, the jury returned guilty verdicts on the accessory counts.

At trial, Gregory Dame was a principal witness for the Commonwealth. Dame testified that he owed money to Manisy for cocaine and had agreed to participate in the robbery as a means of repaying the debt. According to Dame, Manisy planned the robbery, supplied the guns, and received the proceeds. Another Commonwealth witness, Rotha Chhay, corroborated Manisy's involvement in the robbery and testified that Manisy had used the proceeds to buy cocaine which he then directed his confederates to sell.

On the second day of jury deliberations, the jury sent the court a note stating that "We feel that we are a hung jury." The court gave further instructions and asked the jury to resume deliberations. On the third and final day of deliberations, the jury sent the court the following note.

> The juror in seat twelve mentioned yesterday in deliberations that her son had a confrontation with Gregory Dame at some point in the past. She was not aware of this when she was impaneled. Does this disqualify her?

The court found that there was "extraneous matter coming into the jury room that one of the jurors had a relative who had a confrontation with Mr. Dame which [sic] is the central Commonwealth witness." After conferring with counsel, the court summoned the jurors and read back the question. The judge then instructed as follows:

---

1. Manisy's conviction was affirmed by the Massachusetts Appeals Court on December 24, 1997. The Supreme Judicial Court denied his petition for further appellate review on February 20, 1998. See Commonwealth v. Manisey [sic], 427 Mass. 1101, 692 N.E.2d 963 (1998). On January 5, 1999, Manisy filed a *pro se* motion for post-conviction relief, which was denied by the trial judge on August 12, 1999. In an unpublished opinion issued on May 18, 2001, the Appeals Court affirmed the denial of the motion for post-conviction

relief. See Commonwealth v. Manisy, 51 Mass.App.Ct. 1109, 747 N.E.2d 205 (2001). Manisy's application for further appellate review was denied by the Supreme Judicial Court on September 27, 2001.

2. The Magistrate Judge also recommended that Manisy be appointed counsel to assist in any further proceedings involving the juror misconduct claim.

My response to this is not the answer to that question, and except to tell you as strongly as I can, your deliberations in this case must be based upon the evidence you heard in this trial, in the courtroom and upon no other basis. You are limited to the evidence in the case which is the testimony of the witnesses and the exhibits in the case, and you must confine your deliberations to those two areas. Thank you, ladies and gentlemen. Please resume your deliberations.

Neither counsel objected. Approximately six hours later, the jury found Manisy guilty of the accessory charges. A state prison sentence ensued.

In Manisy's direct appeal, new counsel argued that the trial judge had erred in not undertaking to make further inquiry of the jurors in response to their question. Addressing this issue, the Appeals Court held that

> [t]he trial judge's decision, in response to the jury's inquiry, not to make further inquiry and, instead, to emphatically instruct the jurors to decide the matter based only on the evidence in the case did not create a substantial risk of a miscarriage of justice. Here, the information did not "concern[ ] one of the parties or the matter in the litigation," *Commonwealth v. Fidler*, 377 Mass. 192, 200, 385 N.E.2d 513 (1979), and the judge was not required to conduct a hearing. *Id.* at 203, 385 N.E.2d 513. *See also Commonwealth v. Gilchrist*, 413 Mass. 216, 219, 597 N.E.2d 32 (1992). In the present case, the judge acted well within his discretion in refusing to make further inquiry. *See Commonwealth v. Dixon*, 395 Mass. 149, 151–52, 479 N.E.2d 159 (1985).

### The Procedural Default Rule

 A federal court will not undertake habeas corpus review of a state court decision that rests on an independent and adequate state ground. *Phoenix v. Matesanz*, 189 F.3d 20, 24 (1st Cir.1999). Failure to comply with a state procedural requirement is such a ground. *See Wainwright v. Sykes*, 433 U.S. 72, 82, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (the "failure to timely object at trial to an alleged error as required by a state contemporaneous objection rule constitutes an 'independent and adequate state ground' sufficient to foreclose federal habeas corpus review of the alleged error."). A procedurally defaulted claim may, however, be resurrected if the last state court granting review addresses a federal claim on its merits, thereby waiving the default. *Ylst v. Nunnemaker*, 501 U.S. 797, 801, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

To this point, the Magistrate Judge's Report accurately tracks the case law.

> "A finding by a state court that a defendant procedurally defaulted a claim bars federal habeas corpus relief on that claim unless the defendant as a petitioner shows either cause for the default and prejudice from the claimed violation of federal law, or that a fundamental miscarriage of justice will result if the claim is not considered." *Gunter v. Maloney*, 291 F.3d 74, 78 (1st Cir.2002) (citing *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). The doctrine of procedural default arises out of "the long-standing rule that federal courts do not review state court decisions which rest on 'independent and adequate state grounds.' Such independent and adequate state grounds exist where 'the state court declined to hear the federal claims because the prisoner failed to meet a state procedural requirement.' In such a case, 'considerations of comity and federalism bar the federal court's review.' "

*Simpson v. Matesanz,* 175 F.3d 200, 205–06 (1st Cir.1999) (internal citations and punctuation omitted), *cert. denied,* 528 U.S. 1082, 120 S.Ct. 803, 145 L.Ed.2d 677 (2000).

*Report,* at 10–11.

■ The Magistrate Judge also recognized that "[i]n Massachusetts, the rule that 'a claim not raised is waived' is regularly enforced and 'firmly established,'" and "[t]he fact that following a failure to object, [a] state appellate court goes on to review a case under a miscarriage of justice standard does not waive the need for a contemporaneous objection, and does not 'create independent rights in habeas petitioners.'" *Id.* at 11, *quoting Gunter,* 291 F.3d at 79–80. The Magistrate Judge, however, determined that the procedural default rule did not preclude federal review of Manisy's juror misconduct claim. In so concluding, the Magistrate Judge reasoned that because the Appeals Court had failed to specifically mention Manisy's failure to object to the trial court's decision not to pursue a further inquiry of the jurors, it had waived the default. "Rather, the court addressed the merits of Manisy's claim, and concluded that the trial judge had acted within his discretion." *Report* at 12. Finally, the Magistrate Judge determined that "[t]he Appeals Court did *not* analyze the case under a miscarriage of justice standard." *Id.* (emphasis added). It is not clear what the Magistrate Judge meant by this last statement, as the Appeals Court clearly indicated that it had considered whether the judge's handling of the alleged juror misconduct issue had posed a potential risk of a miscarriage of justice. It is likely that the "not" is a transcription error and that the Magis-

trate Judge meant to cite the Appeals Court's reference to the miscarriage of justice standard as further evidence of a waiver.[3] But,

[a]s the First Circuit has repeatedly held, the mere fact that a state appellate court engages in a discretionary, and necessarily cursory, review under a "miscarriage of justice" analysis does not in itself indicate that the court has determined to waive an independent state procedural ground for affirming the conviction. *Tart v. Massachusetts,* 949 F.2d 490, 496–497 (1st Cir.1991). *See Puleio* [*v. Vose,* 830 F.2d 1197, 1200 (1st Cir.1987) ]; *McCown v. Callahan,* 726 F.2d 1, 3 (1st Cir.1984); *Gibson v. Butterworth,* 693 F.2d 16, 17–18 (1st Cir. 1982).

Respondent's Objection, at 9.

■ Even assuming that the Appeals Court had intended (deliberately or not) to waive the default, the waiver would only be effective if its decision " 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" *Coleman,* 501 U.S. 722, 735, 111 S.Ct. 2546 (1990), *quoting Michigan v. Long,* 463 U.S. 1032, 1040–1041, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). *See also Burks v. Dubois,* 55 F.3d 712, 716 n. 2 (1st Cir.1995). That is not the case here. In concluding that the judge's actions had posed no substantial risk of a miscarriage of justice, the Appeals Court cited three Massachusetts Supreme Judicial Court cases explaining the procedures that trial judges are expected to follow when faced with allegations of extraneous influence on a jury. The hold-

---

**3.** It is possible that the Appeals Court reference to the risk of a miscarriage of justice "should be read to mean only that, as a matter of *state* law, the case did not pose a

substantial risk of a miscarriage of justice." *Gibson v. Butterworth,* 693 F.2d 16, 18 (1st Cir.1982).

ings in these three cases are not based upon federal constitutional principles, but rather upon the Supreme Judicial Court's superintendence power.[4] *See Brewer v. Marshall*, 119 F.3d 993, 999–1000 (1st Cir. 1997).[5] As the First Circuit has stated

[n]ot every passing reference to substance dispels the onus of noncompliance with a contemporaneous objection rule. Waiver in such circumstances must entail the state court reaching the gist of the federal constitutional question. The test "is the extent to which the state court relies upon federal rights, cases and legal principles in conducting its review.... The greater the reliance on federal doctrine, the more likely we are to find waiver". *Jackson v. Amaral*, 729 F.2d 41, 45 (1st Cir.1984).

*Puleio*, 830 F.2d at 1200. From the cases it chose to cite, it is manifestly clear that the Appeals Court had Massachusetts, and not federal law in mind, when it concluded

that no miscarriage of justice had occurred. Under the circumstances, the determination that the procedural default rule was waived cannot be supported.

■ As the Magistrate Judge pointed out in her Report, in order to escape from the preclusive effect of a procedural default, a petitioner is obligated to show both "cause" for, and "prejudice" from, his noncompliance with the contemporaneous objection rule.[6] *Murray v. Carrier*, 477 U.S. 478, 485–489, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). The Magistrate Judge correctly concluded that "Manisy cannot demonstrate 'cause' for the default, as that requires 'that some objective factor external to the defense' interfered with counsel's ability to object," *quoting Magee v. Harshbarger*, 16 F.3d 469, 471 (1st Cir.1994), and that "[n]o such external factor existed in the instant case."[7] *Report* at 13. However, even

---

**4.** The cases cited by the Appeals Court were *Fidler*, 377 Mass. 192, 385 N.E.2d 513 (1979); *Gilchrist*, 413 Mass. 216, 597 N.E.2d 32 (1992); and *Dixon*, 395 Mass. 149, 479 N.E.2d 159 (1985). *Fidler*, which held that under appropriate circumstances a defendant is entitled to a hearing on possible juror misconduct, is based squarely on a prior Massachusetts common-law decision, *Woodward v. Leavitt*, 107 Mass. 453, 466 (1871). *See Fidler*, 377 Mass. at 201, 385 N.E.2d 513. *Gilchrist*, which held that under the circumstances relevant to that case the judge was not required to hold a hearing, was in turn based on *Fidler*. *Gilchrist*, 413 Mass. at 220, 597 N.E.2d 32. *Dixon*, while citing *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), in *dicta*, also based its holding on *Fidler*. *Dixon*, 395 Mass. at 151, 153, 479 N.E.2d 159. (*Remmer*, in any event, is itself a superintendence power case. *Remmer's* principle citation is to *Mattox v. United States*, 146 U.S. 140, 148–150, 13 S.Ct. 50, 36 L.Ed. 917 (1892), which in turn cites Justice Gray's decision in *Woodward v. Leavitt, supra*, as persuasive authority).

**5.** While *Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), requires

that a state court "clearly and expressly" state that its decision rests on a state procedural bar, the *Harris* rule applies only when "the decision of the last state court to which the petitioner presented his federal claims... fairly appear[s] to rest primarily upon federal law or to be interwoven with federal law." *Coleman*, 501 U.S. at 735, 111 S.Ct. 2546.

**6.** Cause and prejudice are mutually dependent requirements. The failure to show the first dispenses with the need to inquire as to the second. *Puleio*, 830 F.2d at 1202.

**7.** As the Magistrate Judge recognized, Manisy may not rely on his ineffective assistance claim as "cause" for the default, as he failed to raise the issue in the context of any alleged mishandling of the jury question either on his direct appeal or in his motion for a new trial. *Report*, at 13 n.5. Moreover, a substantive claim that is procedurally defaulted cannot be revived by being repackaged in a collateral proceeding as a claim of ineffective assistance of counsel. *Levasseur v. Pepe*, 70 F.3d 187, 191–192 (1st Cir.1995).

[a]bsent a showing of "cause" and "prejudice," a procedural default may still be excused where failure to hear the claim would result in a "fundamental miscarriage of justice." *Murray*, 477 U.S. at 495–96, 106 S.Ct. 2639. This exception may be invoked where "a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . ." *Id.*, at 496, 106 S.Ct. 2639. In order to satisfy the actual innocence requirement and enable an otherwise barred constitutional claim to be considered on the merits, a petitioner "must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner [guilty]." *Sawyer v. Whitley*, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).

*Ortiz v. Dubois*, 19 F.3d 708, 714 (1st Cir.1994). *See also Bousley v. United States*, 523 U.S. 614, 622–623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). The fundamental miscarriage of justice standard, as its description implies, "is a narrow exception to the cause-and-prejudice imperative, seldom to be used, and explicitly tied to a showing of actual innocence." *Burks*, 55 F.3d at 718 & n. 5 (1st Cir.1995) (questioning whether the showing of actual innocence must be clear and convincing or merely probable). *But see Williams v. Taylor*, 529 U.S. 420, 430–434, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) (a petitioner must present "clear and convincing" evidence of actual innocence). The Magistrate Judge correctly held that Manisy cannot benefit from the "fundamental mis-

carriage of justice" exception. As she observed in her Report, the evidence against Manisy was "quite strong" and "substantial," *see Report*, at 14, 23, and therefore inferentially insufficient to support a claim of innocence.[8] Consequently, the recommendation that even if this court finds a procedural default (as it has), it should nonetheless deny the motion to dismiss the juror misconduct claim and appoint counsel to assist Manisy in addressing "whether the miscarriage of justice exception to the procedural default bar is [nonetheless] applicable," is inconsistent with the findings of the Report itself.

### ORDER

For the foregoing reasons, the court adopts the Magistrate Judges's Recommendation with respect to claims two and three,[9] rejects the Recommendation with respect to claim one, declines to appoint counsel, and dismisses the petition in its entirety.

SO ORDERED.

### REPORT AND RECOMMENDATION ON PETITIONER'S RENEWED MOTION FOR APPOINTMENT OF COUNSEL AND RESPONDENT'S MOTION TO DISMISS

DEIN, United States Magistrate Judge.

### I. INTRODUCTION

On December 7, 1995, Petitioner Sinethone Manisy ("Manisy") was convicted by a Franklin County Superior Court jury of

---

**8.** The alleged violation in this case, that is, the failure to further inquire of the juror whose son had been involved in an altercation with the Commonwealth's chief witness simply underscores the point. If this supposed extraneous influence could have been expected to work to anyone's advantage, it would have been Manisy himself, which likely explains

the tactical decision of his counsel not to pursue the matter further with the trial judge.

**9.** Whether claims two and three should be dismissed on grounds of procedural default (as respondent contends) or on their merits, as the Magistrate Judge recommends, need not be decided, as either ground is sufficient to support dismissal.

being an accessory before and after the fact of an armed robbery. He was sentenced to a term of not more than twenty years and not less than fifteen years on the accessory before the fact count, and a concurrent term of not more than five years nor less than three years on the accessory after the fact count. Manisy's conviction was affirmed by the Massachusetts Appeals Court in an unpublished Memorandum and Order Pursuant to Rule 1:28 on December 24, 1997. *See* Supplemental Answer ("Supp.Answer") (Docket # 25) Ex. 3; *Commonwealth v. Vath,* 44 Mass.App.Ct. 1107, 688 N.E.2d 478 (1997) (table). The Supreme Judicial Court denied his petition for further appellate review on February 20, 1998. *See Commonwealth v. Manisey* [sic], 427 Mass. 1101, 692 N.E.2d 963 (1998) (table).

On January 5, 1999, Manisy filed a *pro se* motion for post-conviction relief, which was denied by the trial judge on August 12, 1999. *See* Supp. Answer Ex. 6 at 023. In an unpublished opinion issued on May 18, 2001, the Appeals Court affirmed the denial of the motion for post-conviction relief. *See* Supp. Answer Ex. 7, *Commonwealth v. Manisy,* 51 Mass.App.Ct. 1109, 747 N.E.2d 205 (2001) (table). Manisy's application for further appellate review was denied by the Supreme Judicial Court on September 27, 2001. *See* Supp. Answer Exs. 8, 9.

On November 7, 2001, Manisy filed a timely petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. As grounds for his petition, Manisy asserts: (1) that there was juror misconduct as a result of which he was denied the right to a fair and impartial jury; (2) that his conviction was obtained "by the use of improper non-

probative prejudicial evidence of prior bad acts and bad character;" and (3) that he was denied the right to the effective assistance of counsel due to counsel's failure to object to certain evidence and his introduction of other evidence. (Docket # 2). In addition, Manisy has moved for the appointment of counsel (Docket # 27).[1]

Respondent has filed an answer as well as a Motion to Dismiss (Docket # 13). As grounds for dismissal, Respondent argues that Manisy's first two claims were procedurally defaulted, and that the ineffective assistance of counsel claim is unexhausted because it is based on different facts than asserted below. In the alternative, Respondent argues that the ineffective assistance of counsel count fails to state a claim since the state court adjudication was not contrary to or an unreasonable application of clearly established Supreme Court law. Manisy has filed a *pro se* memorandum in opposition to the motion to dismiss (Docket # 24).

Presently before the court are Respondent's Motion to Dismiss (Docket # 13), and Manisy's Renewed Motion for Appointment of Counsel (Docket # 27). Since the merits of the habeas petition are relevant to both motions, it is appropriate that they be treated together. ˙For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the Motion to Dismiss be DENIED as to the alleged juror misconduct claim (count one), and that counsel be appointed to address that issue. This court further recommends that the Motion to Dismiss be ALLOWED and the Renewed Motion to Appoint Counsel be DENIED as to the remaining two counts of the habeas petition.

1. Presently before the court is Manisy's Renewed Motion for Appointment of Counsel. By order dated November 12, 2002, this court denied Petitioner's original motion to appoint counsel, without prejudice, as he had not submitted any information about his financial status. Manisy has made the appropriate filing in connection with his renewed motion.

## II. STATEMENT OF FACTS

On December 29, 1994, four persons armed with guns and wearing masks robbed The Wok, a restaurant in Deerfield, Massachusetts.[2] Manisy was indicted on February 17, 1995 by a Franklin County Grand Jury for armed robbery, accessory before the fact and accessory after the fact. At the close of the evidence at trial, the court granted Manisy's motion for a required finding of not guilty on the armed robbery charge. On December 7, 1995, the jury returned a guilty verdict on the remaining two accessory counts.

### The Trial

Six men were indicted for the robbery: Michael Velasquez, Sath Pho, Rotha Chhay, Gregory Dame, Sokha Vath and Manisy. Manisy and Vath were tried together. As Manisy described the relevant trial testimony in his brief to the Appeals Court:

Gregory Dame and Rotha Chhay testified on behalf of the Commonwealth. Mr. Dame recounted that he owed Mr. Manisy money for cocaine and the robbery, planned by the Defendant (Manisy), was to obtain money to cover Mr. Dame's debt to the Defendant. Mr. Dame also testified that the Defendant would and did provide the guns for the robbery.

Mr. Dame also testified that after the robbery the money was given to Mr. Manisy.

Rotha Chhay (Buster), also testified that the Defendant planned the robbery to pay for the drugs owed by Dame. Buster stated that the money stolen was given to the Defendant who obtained cocaine which was given to him and others in the robbery to sell. Buster also testified

that the Defendant was trying to find a place to hide the drugs and guns . . . .

Supp. Answer Ex. 1 at 10–11 (transcript cites omitted). As detailed more fully below, Manisy challenges the admission of much of this testimony.

On the second day of jury deliberations, the jury sent the court a note which stated "We feel that we are a hung jury." Transcript ("Tr.") VI (Docket # 20) at 14. The court gave them further instructions and asked them to continue their deliberations. Id. at 14–15. On the third and final day of jury deliberations, the court received a note from the jury. It read:

The juror in seat twelve mentioned yesterday in deliberations that her son had a confrontation with Gregory Dame at some point in the past. She was not aware of this when she was impaneled. Does this disqualify her?

Tr. VII (Docket # 21) at 3. The court found that there was "extraneous matter coming into the jury room that one of the jurors had a relative who had a confrontation with Mr. Dame which [sic] is the central Commonwealth witness." Id. at 7. After consulting with counsel, the court called the jury in and read the question aloud. The judge then instructed the jury as follows:

My response to this is not the answer to that question, and except to tell you as strongly as I can, your deliberations in this case must be based upon the evidence you heard in this trial, in the courtroom and upon no other basis. You are limited to the evidence in the case which is the testimony of the witnesses and the exhibits in the case, and you must confine your deliberations to those two areas. Thank you, ladies and

---

**2.** Unless otherwise indicated, the factual background is taken from Petitioner's brief to

the Appeals Court on his direct appeal. Supp. Answer Ex. 1.

gentlemen. Please resume your deliberations. *Id.* at 10. Counsel had "no objection" to this procedure. *Id.* at 9. Five and a half hours after this instruction, the jury returned its verdict. They found Vath guilty of seven of the eight counts against him, and Manisy guilty of the two charges against him. *Id.* at 10–12. As detailed more fully below, Manisy challenges the trial court's failure to conduct further inquiry into this jury matter.

Additional facts will be included where appropriate in the analysis of the Petitioner's claims.

### III. *ANALYSIS*

#### A. *Appointment of Counsel*

■ Pursuant to 18 U.S.C. § 3006A(a)(2)(B), when a court "determines that the interests of justice so require, representation may be provided for any financially eligible person" who is seeking relief under 28 U.S.C. § 2254. The decision to appoint counsel is discretionary, as "an indigent civil litigant in federal court has no constitutional or statutory right to the appointment of counsel, even if he is challenging a criminal conviction as by a proceeding such as this for habeas corpus." *Dellenbach v. Hanks,* 76 F.3d 820, 823 (7th Cir.), *cert. denied,* 519 U.S. 894, 117 S.Ct. 237, 136 L.Ed.2d 167 (1996). *Cf. Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987) (in connection with state proceedings, Court ruled "[w]e have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions, . . . and we decline to so hold today") (citation omitted). Thus, the Petitioner must establish "that he was indigent and that exceptional circumstances were present such that a denial of counsel was likely to result in fundamental unfairness impinging on his due process rights." *DesRosiers v. Moran,* 949 F.2d 15, 23 (1st Cir.1991).

■ In determining whether "there are exceptional circumstances sufficient to warrant the appointment of counsel, a court must examine the total situation, focusing, *inter alia,* on the merits of the case, the complexity of the legal issues, and the litigant's ability to represent himself." *Id.* at 24. *Accord Hoggard v. Purkett,* 29 F.3d 469, 471 (8th Cir.1994), and cases cited. Applying these standards to the instant case, the court recommends that Manisy's motion to appoint counsel be allowed as to further proceedings relating to count one of Manisy's habeas petition, but otherwise denied.

In connection with his Renewed Motion for Appointment of Counsel, Manisy has filed financial information which establishes that he meets the indigency requirement for appointment of counsel. (Docket # 27). Thus, that factor is no longer an issue. *See* note 1, *supra; Ivey v. Bd. of Regents,* 673 F.2d 266, 269 (9th Cir.1982) (to proceed *in forma pauperis* requires a greater showing of financial hardship than needed to qualify for appointment of counsel).

■ The issues raised by the Motion to Dismiss are not sufficiently factually or legally complex so that appointment of counsel would benefit the Petitioner or the court. To the extent that the Respondent has alleged a failure to exhaust state remedies, the record is before the court and the factual comparison which must be made does not require new counsel. *See Hoggard v. Purkett,* 29 F.3d at 471 ("Where the issues involved can be properly resolved on the basis of the state court record, a district court does not abuse its discretion in denying a request for court-appointed counsel."). The "procedural default" standard is one with which the court

is sufficiently familiar so additional pleadings by counsel are not needed. *See Abdullah v. Norris*, 18 F.3d 571, 573 (8th Cir.), *cert. denied*, 513 U.S. 857, 115 S.Ct. 163, 130 L.Ed.2d 101 (1994) (where petitioner can rely on briefs filed in state court, and no novel issue of law presented, no appointment of counsel warranted in habeas proceeding). Moreover, Petitioner has filed a *pro se* memorandum in opposition to the motion to dismiss which shows that he has "a good understanding of the issues and the ability to present forcefully and coherently his contentions." *LaMere v. Risley*, 827 F.2d 622, 626 (9th Cir.1987) (affirming denial of petitioner's motion for appointment of counsel).

As to the merits of the Petitioner's claims, as detailed below, this court finds that Manisy's juror misconduct claim raises sufficiently complex legal and factual issues to warrant the assistance of counsel. Consequently, if the District Judge adopts this court's recommendation, and denies the Motion to Dismiss count one, this court recommends that counsel be appointed to participate in further proceedings relating to that claim.

However, as further detailed below, this court recommends that counts two and three of the habeas petition be dismissed. This court did not find the issues raised to be sufficiently complex so that the input of counsel would assist the court, and the merits have been fully briefed below. The fact that a matter has been fully briefed further mitigates against the appointment of counsel. *See Nachtigall v. Class*, 48 F.3d 1076, 1082 (8th Cir.1995) (quality of

*pro se* pleadings appropriately considered in denying request for counsel). Consequently, if the District Judge adopts this court's recommendation, and dismisses counts two and three of the petition, this court recommends that the motion to appoint counsel be denied as to those counts as well.

### B. *The Motion to Dismiss*

### 1. *Count One: Juror Misconduct*

As detailed above, following receipt of a note from the jury the trial judge, with counsel's consent, did not conduct any further inquiry into the matter, but expressly and "strongly" instructed the jury that its deliberations must be based only on evidence heard during the trial in the courtroom and not on any other considerations. Tr. VII at 10. In his habeas petition, Manisy contends that this incident constitutes "juror misconduct and denial of the right to a fair and impartial jury." Petition (Docket #2) at Ground I. The Respondent has moved to dismiss this claim on the basis that it was procedurally defaulted and the Petitioner cannot establish cause for the default or a miscarriage of justice. This court finds that there was not a procedural default, and recommends that the motion to dismiss this claim be denied.

### a. *Facts*

In the direct appeal, counsel for Manisy (who was not trial counsel) argued that the trial judge had erred in not undertaking further inquiry of the jury in response to the jury question. Supp. Answer Ex. 1 at 24–25.[3] The Appeals Court ruled:

---

**3.** In this argument, the Petition relied on both state and federal cases. While the motion for a new trial more clearly presented the Petitioner's federal constitutional claims, and the motion was denied on procedural grounds (*see infra*), the Respondent does not rely on the rulings on the motion for a new trial to

support his procedural default argument. Rather, Respondent argues that the Appeals Court, on the direct appeal, relied on the defendant's failure to object at trial, as a result of which the claim is procedurally defaulted. As detailed *infra,* this court disagrees

The trial judge's decision, in response to the jury's inquiry, not to make further inquiry and, instead, to emphatically instruct the jurors to decide the matter based only on the evidence in the case did not create a substantial risk of a miscarriage of justice. Here, the information did not "concern[ ] one of the parties or the matter in the litigation," *Commonwealth v. Fidler,* 377 Mass. 192, 200, 385 N.E.2d 513 (1979), and the judge was not required to conduct a hearing. *Id.* at 203, 385 N.E.2d 513. *See also Commonwealth v. Gilchrist,* 413 Mass. 216, 219, 597 N.E.2d 32 (1992). In the present case, the judge acted well within his discretion in refusing to make further inquiry. *See Commonwealth v. Dixon,* 395 Mass. 149, 151–52, 479 N.E.2d 159 (1985).

Supp. Answer Ex. 3. The "miscarriage of justice" standard of review cited by the Appeals Court is applicable where there is a lack of objection at the trial level. *See Burks v. Dubois,* 55 F.3d 712, 716 n. 2 (1st Cir.1995), and cases cited.

#### b. *Procedural Default*

"A finding by a state court that a defendant procedurally defaulted a claim bars federal habeas corpus relief on that claim unless the defendant as a petitioner shows either cause for the default and prejudice from the claimed violation of federal law, or that a fundamental miscarriage of justice will result if the claim is not considered." *Gunter v. Maloney,* 291 F.3d 74, 78 (1st Cir.2002) (citing *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). The doctrine of procedural default arises out of "the longstanding rule that federal courts do not review state court decisions which rest on 'independent and adequate state grounds.' Such independent and adequate state grounds exist where 'the state court declined to hear the federal claims because the prisoner failed to meet a state procedural requirement.' In such a case, 'considerations of comity and federalism bar the federal court's review.'" *Simpson v. Matesanz,* 175 F.3d 200, 205–06 (1st Cir. 1999) (internal citations and punctuation omitted), *cert. denied,* 528 U.S. 1082, 120 S.Ct. 803, 145 L.Ed.2d 677 (2000).

In Massachusetts, the rule that "a claim not raised is waived" is regularly enforced and "firmly established." *Gunter v. Maloney,* 291 F.3d at 79 and cases cited. The fact that following a failure to object, the state appellate court goes on to review a case under a miscarriage of justice standard does not waive the need for a contemporaneous objection, and does not "create independent rights in habeas petitioners." *Id.* at 79–80 and cases cited. *Accord Burks v. Dubois,* 55 F.3d at 716 n. 2 Therefore, if the Appeals Court declined to hear the merits of Manisy's claim because he failed to object at trial, this court could not review the state court decision. *See Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir.1997), *cert. denied,* 522 U.S. 1151, 118 S.Ct. 1172, 140 L.Ed.2d 182 (1998). The state court decision would be "said to rest on independent and adequate state procedural grounds," and this federal court could not "review claims the state courts never had a chance to consider." *Id.*

Respondent argues that the fact that the Appeals Court referenced the miscarriage of justice standard establishes that it was proceeding on the basis that the defendant did not object below. This court does not read the Appeals Court decision the same way. The Appeals Court does not mention the defendant's failure to object at trial. Rather, the court addressed the merits of Manisy's claim, and concluded that the

with Respondent's interpretation of the Appeal's Court decision.

trial judge had acted within his discretion. The Appeals Court did not analyze the case under a miscarriage of justice standard. This is not a situation where the state court declined to address the merits of the claim, nor is it a situation where the court addressed the merits only as an alternative ground to an equally valid judgment based on a procedural bar. *See Boutwell v. Bissonnette*, 66 F.Supp.2d 243, 245 (D.Mass.1999), and cases cited. In those cases, the doctrine of procedural default can and should apply. *Id.* In the instant case, however, Manisy's failure to object at trial was not controlling. As the Appeals Court did address the merits of the claim, there is no procedural bar to a habeas review.[4] *See Gunter v. Maloney*, 291 F.3d 74, 80 (1st Cir.2002) ("If the last state court to review a petitioner's case reaches the merits of a federal claim presented to it, any bar to federal court review is lifted"), and cases cited.

Moreover, even assuming there was a procedural default, federal habeas review is available if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. at 750, 111 S.Ct. at 2565. Manisy cannot demonstrate "cause" for the default, as that requires "that some objective factor external to the defense" interfered with counsel's ability to object. *Magee v. Harshbarger*,

16 F.3d 469, 471 (1st Cir.1994). No such external factor existed in the instant case.[5] However, this court recommends that determination of whether the standard of miscarriage of justice has been met should not be addressed without giving Manisy the opportunity to be represented by counsel on this issue.

The "fundamental miscarriage of justice" exception to the procedural default rule, as discussed in more detail *infra*, is admittedly a "narrow exception" which requires the Petitioner to meet the heavy burden of showing "a probability that a reasonable jury would not have convicted but for the constitutional violation." *Burks v. Dubois*, 55 F.3d at 717–18. In the instant case, the evidence against Manisy was quite strong. However, it was dependent on the credibility of his co-defendants, Gregory Dame and Rotha Chhay. The jury's note indicated the possibility that it considered extraneous information relating to the credibility of Dame. The jury deliberated for several days and, at one point, reported being dead-locked. Whether this was a situation where the jury was allowed "to continue deliberating while in possession of information that they may well have weighed adversely to the defendant," and resulted in a substantial risk of a miscarriage of justice "because it plausibly influenced the guilty verdicts in a material way," requires further analysis than that presented in the pleadings relating to the motion to dismiss. *See*

---

**4.** The Petitioner does not address the Appeals Court decision on direct appeal in his opposition to the motion to dismiss. Rather, his procedural default argument relates to the rulings on his motion for a new trial, which motion was denied on procedural grounds. However, the Respondent did not rely on the rulings on the motion for a new trial (*see* note 3, *supra*), so those rulings will not be addressed in connection with the motion to dismiss the juror misconduct claim.

**5.** While ineffective assistance of counsel may constitute "cause" for failing to object at trial, that claim must be exhausted below before it can be raised in a habeas petition. *See Gunter v. Maloney*, 291 F.3d at 81, and cases cited. Manisy did not raise an ineffective assistance claim based on the handling of the jury question in his direct appeal or in his motion for a new trial.

*Commonwealth v. Fredette*, 56 Mass.App. Ct. 253, 258–62, 776 N.E.2d 464, 468–72 (judge could not make necessary determination that juror would not be swayed by extraneous information when he failed to inquire and determine the context of extraneous information), *rev. denied*, 438 Mass. 1103, 780 N.E.2d 468 (2002).

Similarly, the question whether the trial judge committed error, much less error of a constitutional dimension, is not easily resolved. The Appeals Court limited the need for further inquiry of the jury to situations where the extraneous facts being considered concerned "one of the parties or the matter in litigation," and concluded that no such matter had been raised. Supp. Answer Ex. 3 (citing *Commonwealth v. Fidler*, 377 Mass. 192, 200, 385 N.E.2d 513, 518 (1979)). However, in light of the trial judge's failure to make further inquiry, it may have been impossible for the trial judge to determine what the subject matter of the extraneous facts actually was. *See Commonwealth v. Fredette*, 56 Mass.App.Ct. at 259, 776 N.E.2d at 470. In *Commonwealth v. Kamara*, 422 Mass. 614, 616, 664 N.E.2d 825, 827 (1996) (decided after Manisy's jury verdict but before the Appeals Court decision), the Supreme Judicial Court held that "when a claim of extraneous influence on a jury is raised [before a verdict has been reached], a trial judge must assess the possible prejudicial effect of the jury's exposure to extraneous information, and weigh the impact of that extraneous information on the jurors *by conducting an individual voire dire of each juror* .... *The judge should also consider the efficacy of curative instructions.*" (Citations omitted, emphasis added.) On the other hand, there are situations where a curative instruction alone has been found sufficient. *See, e.g., Commonwealth v. Francis*, 432 Mass. 353, 369–71, 734 N.E.2d 315, 330–31 (2000). The appointment of counsel would assist this court in addressing Manisy's claim of error.

In sum, this court recommends that the motion to dismiss count one be denied, as there was no procedural default, and that counsel be appointed to address the merits of the claim. If the District Court does find that there was a procedural default, this court still recommends that the motion to dismiss this count be denied, and that counsel be appointed to address whether the miscarriage of justice exception to the procedural default bar is applicable in the instant case.

### 2. *Count Two: Prior Bad Acts*

#### a. *Facts*

As his second grounds for his habeas petition, Manisy alleges that his conviction was obtained "by the use of improper non-probative prejudicial evidence of prior bad acts and bad character." (Docket # 2). As Manisy described this claim in his petition:

> The prosecutor introduced evidence of a purportedly planned but unexecuted, and uncharged, robbery, rumors and allegations of gang membership, and testimony that the defendant hid guns and drugs unrelated to the case at bar. This evidence was non-probative in relation to the charged offenses and strictly calculated to portray the defendant in a bad light through allegations of unsubstantiated prior bad acts and being a person of bad character.

Petition (Docket # 2) at Supplement, Ground II. *See also* Supp. Answer Ex. 6 at 18–23 (appeal from denial of motion for new trial). The Respondent has moved to dismiss this claim on the grounds that it was procedurally defaulted. This court agrees and recommends that the motion to dismiss count two be allowed.

Manisy first raised the claim that reversible error had been committed due to the admission of the prior bad acts testimony in his motion for a new trial. Supp. Answer Ex. 6, Appendix at 018–19. He further contended that counsel's failure to object to such evidence constituted ineffective assistance of counsel. *Id.* at 021. The motion for a new trial was denied by the trial judge on the basis that "none of the issues raised are newly-discovered evidence. These issues could have been raised on appeal." *Id.* at 023. The Appeals Court affirmed the denial of the motion for a new trial, ruling:

> We have reviewed the arguments made in the collateral attack on the prior criminal convictions. The judge was correct; all the arguments could have been made, but were not, on his direct appeal. The defendant now is precluded from making such arguments unless his is an "extraordinary" case which invokes or "rarely used power" in order to avoid a substantial risk of a miscarriage of justice .... This is not such a case.

Supp. Answer Ex. 7. Manisy's petition to the SJC for further appellate review was denied without opinion. Supp. Answer Ex. 9.

### b. *Procedural Default*

In connection with this claim, the state court's decision was clearly based on Manisy's procedural default. Therefore, habeas relief is barred unless the petitioner "shows either cause for the default and prejudice from the claimed violation of federal law, or that a fundamental miscarriage of justice will result if the claim is not considered." *Gunter v. Maloney,* 291 F.3d at 78 (quotation omitted). He cannot meet this standard.

### *"Cause"*

 "In order to establish cause for the default, petitioner must demonstrate 'that some objective factor external to the defense impeded [defense] counsel's efforts to comply with the State's procedural rule." *Magee v. Harshbarger,* 16 F.3d at 471 (quoting *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). Here, there was no external factor which precluded trial counsel from complying with the requirement that timely objection be made. Similarly, appellate counsel did not raise the issue on direct appeal even though nothing prevented him from doing so if he felt it was meritorious. Thus, absent ineffective assistance of counsel, Manisy cannot satisfy the "cause" requirement.

Ineffective assistance of counsel may constitute "cause" for failing to object at trial, provided that the claim was exhausted below. *See Gunter v. Maloney,* 291 F.3d at 81. Here, Manisy raised the claim of ineffective assistance of counsel based on the failure to object to this testimony in his motion for a new trial, as well as in his appeal from the denial of that motion, and in his application for leave to obtain further appellate review. Supp. Answer Ex. 6 at 18–19, and App. at 021; Supp. Answer Ex. 8 at 3. This is sufficient to exhaust the claim. *Gunter v. Maloney,* 291 F.3d at 82 ("where the claim has not been fairly presented on direct appeal, as happened here, it should be fairly presented to the state court through a motion for collateral relief"); *Barresi v. Maloney,* 296 F.3d 48, 52 (1st Cir.2002) (claim must be presented to state's highest court for exhaustion purposes).

Despite the fact that Manisy's claim of ineffective assistance of counsel can be raised in this petition, Manisy still cannot establish "cause" to excuse the procedural default on the basis of counsel's failure to object to this "bad acts" testimony. Assuming, arguendo, that counsel should

have objected to the testimony, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray v. Carrier*, 477 U.S. at 486–87, 106 S.Ct. at 2644. "So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington*," 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the defendant "bear[s] the risk of attorney error that results in procedural default." *Murray v. Carrier*, 477 U.S. at 488, 106 S.Ct. at 2645. A review of the record fails to establish that trial counsel's lack of objection to the admission of this testimony violates the standard established by *Strickland v. Washington*.

### Ineffective Assistance of Counsel

28 U.S.C. § 2254 provides in relevant part that a writ of habeas corpus may not issue "unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As the United States Supreme Court explained in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions

but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 412–13, 120 S.Ct. at 1523. "[A]n *unreasonable* application of federal law is different from an *incorrect* or *erroneous* application of federal law." *Id.* at 412, 120 S.Ct. at 1523. Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411, 120 S.Ct. at 1522.

In order for Manisy to demonstrate that the state court acted contrary to or in an unreasonable application of Supreme Court precedent, he must establish a violation of the standard for effective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As the *Strickland* court held:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687, 104 S.Ct. at 2064.

In the instant case, the government's theory was that the co-defendant/witness, Gregory Dame, sold drugs supplied by Manisy and failed to pay him approximately $1,000 for the drugs. To recoup his

loss, Manisy planned a robbery (to be carried out by Dame, Chhay and others), initially of Cumberland Farms, and then of The Wok. After the robbery, the money was given to Manisy. Manisy used the money to buy cocaine, which was to be resold by Dame, Chhay and others.

The testimony relating to the "purportedly planned but unexecuted, and uncharged robbery" about which Petitioner now complains was not testimony about an unrelated event. Rather, the testimony was that the group originally discussed robbing a Cumberland Farms but later switched the locale to The Wok. *See, e.g.,* Tr. III (Docket # 17) at 173–74; Tr. IV (Docket # 18) at 122–26. Thus, this was not evidence of a prior bad act but, rather, was part of the planning of the robbery with which Manisy was charged. There was no grounds for objection. *See Commonwealth v. Irving,* 51 Mass.App.Ct. 285, 292, 744 N.E.2d 1140, 1146 (evidence of motive of armed robbery admissible), *rev. denied,* 434 Mass. 1105, 752 N.E.2d 240 (2001). Similarly, there was no testimony about the defendant being in a gang, and trial counsel halted any inquiry into that subject. *See, e.g.,* Tr. III at 203–08. Again, a claim of ineffective assistance of counsel for failure to object to this testimony cannot be sustained.

Finally, the record does not support Petitioner's claim that there was prejudicial testimony that he hid guns and drugs "unrelated to the case at bar." The testimony was that a .22 caliber revolver and .22 caliber sawed-off rifle were hidden in the ceiling. Tr. IV at 157–58. It appears that these were used in the robbery, *see id.* at

141–42, although there is some confusion on this point.[6] There was no testimony that drugs were hidden. *Id.* at 158–59. Moreover, the fact that the robbery was undertaken to recoup money for a drug sale gone bad was admissible as motive for the robbery, so any testimony about drugs in the apartment after the robbery was clearly harmless error, if any error at all.

In sum, there was no error due to counsel's failing to object, much less error of a constitutional dimension. For the reasons detailed herein and below in connection with the discussion of count three, the record reflects tactical decisions which do not support a claim of ineffective assistance of counsel. *See Genius v. Pepe,* 147 F.3d 64, 66 (1st Cir.1998), *cert. denied,* 526 U.S. 1121, 119 S.Ct. 1773, 143 L.Ed.2d 802 (1999). Therefore, Petitioner cannot establish cause to excuse the procedural default, and the motion to dismiss should be allowed.

### *"Prejudice"*

Even assuming Manisy could establish cause to excuse the procedural default, he cannot establish prejudice. " 'The question is not whether the defendant would more likely than not have received a different verdict,' " but whether " 'he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.' " *Strickler v. Greene,* 527 U.S. 263, 289–90, 119 S.Ct. 1936, 1952, 144 L.Ed.2d 286 (1999) (quoting *Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995)). The Petitioner has failed to establish that the admission of the challenged testimony calls into question whether he received a fair trial worthy of confidence.[7]

---

**6.** In his closing, Manisy's counsel argued that a gun was found which had nothing to do with the robbery, but he used this to further support the theme that Dame committed the crime and had fabricated the story against Manisy in an attempt to reduce his sentence.

*See* Tr. V (Docket # 19) at 74–75. The Commonwealth, however, implied that the firearms all related to the robbery. *Id.* at 96.

**7.** Nothing herein should be viewed as prejudging a similar analysis in connection with

*See Derman v. United States,* 298 F.3d 34, 45 (1st Cir.), *cert. denied,* 537 U.S. 935, 123 S.Ct. 35, 154 L.Ed.2d 236 (2002), and cases cited. There was substantial evidence from participants in the robbery to support the verdict.

### Miscarriage of Justice

 Finally, "[e]ven absent a showing of cause and prejudice, a federal court exercising its habeas powers should nonetheless overlook a procedural default and hear a barred constitutional claim on the merits if its failure to do so would result in a fundamental miscarriage of justice." *Burks v. Dubois,* 55 F.3d at 717. As the *Burks* court explained:

> This is a narrow exception to the cause-and-prejudice imperative, seldom to be used, and explicitly tied to a showing of actual innocence .... To be sure, a habeas petitioner need not prove his innocence beyond all doubt in order to reach the safe haven of the miscarriage exception: it suffices if the petitioner can show a probability that a reasonable jury would not have convicted but for the constitutional violation.

*Id.* at 717–18 (internal citations omitted).

In the instant case, there was substantial evidence against Manisy. Assuming the credibility of Dame and Chhay, participants in the robbery place Manisy as the ringleader. Even assuming error in the admissibility of the belatedly challenged testimony, Manisy cannot meet his burden of proving that, but for the error, the jury would not have convicted him. For this reason as well, the motion to dismiss count two should be denied.

the court's handling of the jury question. That count goes to the reliability of the jury deliberation process—the essence of the right to a fair trial. It also addresses the credibility

#### c. Count Three: Ineffective Assistance of Counsel

As his third and final ground for his petition, Manisy argues that he was denied the right to the effective assistance of counsel. He describes his claim as follows:

> The defendant's counsel failed to object to or move to strike the above-discussed evidence of prior bad acts and bad character introduced by the prosecutor. Moreover, in an outrageous blunder he introduced drugs which had been properly excluded by the trial judge. The prejudicial evidence of prior bad acts and had character encouraged the jury to conclude the defendant knew his loaned car would be used to commit a crime.

(Docket # 2 at Ground III). The Respondent has moved to dismiss this count on the grounds that Manisy failed to exhaust this claim as he presented a different factual basis for his ineffective assistance of counsel claim before the state court. In the alternative, Respondent contends that this claim should be dismissed for failure to state a claim as the defendant failed to establish that the state court decision was contrary to or an unreasonable application of state law.

 "In order to present a federal claim to the state courts in a manner sufficient to satisfy exhaustion concerns, a petitioner must inform the state court of both the factual and legal underpinnings of the claim." *Scarpa v. DuBois,* 38 F.3d 1, 6 (1st Cir.1994), *cert. denied,* 513 U.S. 1129, 115 S.Ct. 940, 130 L.Ed.2d 885 (1995), and cases cited. Thus, the exhaustion requirement "is not satisfied if a petitioner presents new legal theories or new factual allegations in federal court that transform

of a key witness. However, absent the jury question, this court has no possible basis to conclude that the jury wrongfully credited Dame's testimony.

his claim or cast it in a significantly different light." *Domaingue v. Butterworth*, 641 F.2d 8, 12 (1st Cir.1981).

In his direct appeal, the Petitioner did assert that counsel had "opened the door to the admission of the drugs into evidence" even though the drugs had previously been excluded by the trial judge. Supp. Answer Ex. 1 at 27–28. This is sufficiently identical to the claim in Manisy's habeas petition that trial counsel committed "an outrageous blunder" by introducing "drugs which had been properly excluded by the trial judge."[8] *See Barresi v. Maloney*, 296 F.3d at 51–52 (for exhaustion purposes, "the substance of" petitioner's claims must be fairly presented to state's highest court). As detailed above, in his motion for a new trial, and thereafter, Petitioner asserted that the failure to object to the "bad act" testimony constituted ineffective assistance of counsel. Supp. Answer Ex. 6, Appendix at 021. This is sufficient to satisfy the exhaustion requirement for that claim. *See Gunter v. Maloney*, 291 F.3d at 82. Therefore, the claim of ineffective assistance of counsel was properly exhausted, and ripe for federal habeas review.

Nevertheless, this court agrees that this count of the petition fails to state a claim, and recommends that the petition be denied.

 The fact that counsel's failure to object to "bad acts" testimony did not constitute ineffective assistance of counsel is discussed above, and will not be repeated here. The admission of testimony regarding the purchase of drugs which had been provisionally excluded by the trial judge also was not ineffective assistance of counsel. The Appeals Court, on Manisy's direct appeal, applied the appropriate standard to Manisy's ineffective assistance claim, which included, at least in part, his present claim of improperly allowing the introduction of the cocaine purchased with the proceeds of the robbery. As the Appeals Court held:

> Applying the *Saferian* test (*Commonwealth v. Saferian*, 366 Mass. 89, 96, 315 N.E.2d 878 (1974)), we think there has been no showing that this defendant was deprived of "an otherwise available, substantial ground of defense," *id.* at 96, 315 N.E.2d 878, nor has it been shown that defense counsel's tactics were manifestly unreasonable. The fact that counsel did not object to the admission of the drug analysis cannot constitute ineffective assistance where there has been no showing that an objection would have been successful.

Supp. Answer Ex. 3. Under *Saferian*, a defendant must show that:

> there has been serious incompetency, inefficiency, or inattention by counsel—behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer—and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available substantial ground of defense.

366 Mass. 89, 96, 315 N.E.2d 878, 883 (1974). "This is functionally identical to the federal standard," as defined by *Strickland*. *See Scarpa v. DuBois*, 38 F.3d at 7 n. 4.

In a pretrial conference, the fact that the money was used to purchase drugs was provisionally excluded by the trial judge, leaving it open as to whether the

---

**8.** Undoubtedly any discrepancy in the description of counsel's alleged error would be rectified on further briefing. The fact that the issue raised in the habeas petition is the same as presented below is made clear in Petitioner's response to the motion to dismiss (Docket # 24) at 4–5.

evidence would come out in cross-examination. *See* Tr. I at 12–17. Following Manisy's counsel's cross-examination of Dame, the subject came up again in a conference with the judge. Petitioner's counsel withdrew his objection to the evidence that some of the proceeds of the robbery were spent on drugs: stating that such evidence "cuts both ways." Tr. IV at 7. The prosecution on redirect then brought out that the robbery proceeds were used to buy drugs. Tr. IV at 33–34.

The fact that the defendant was a drug dealer and the testimony as to the motive for the robbery being pay back money owed for drugs was admissible, and did not create a substantial risk of miscarriage of justice. *Commonwealth v. Irving*, 51 Mass.App.Ct. at 292, 744 N.E.2d at 1146 (under facts very similar to the instant case, "trial judge properly admitted evidence of the defendant's involvement with drugs, both as a seller and user, because it depicted the relationship between the defendant and [his co-defendant] and established motive for [them] to commit the robbery"). Acts occurring subsequent to the offense charged may be used for the same purpose. *See Commonwealth v. Myer*, 38 Mass.App.Ct. 140, 143 n. 2, 646 N.E.2d 155, 157 n. 2 (1995), and cases cited ("Whether the alleged 'bad act' occurred before or after the event that is the subject of the pending charges is not of itself a bar to admission."). Thus, there was no error on the part of Manisy's counsel, and no ineffective assistance of counsel.

Most importantly, counsel made tactical decisions which were supportable, and did not fall below the level of acceptable representation. The testimony of Dame and Chhay was critical, and the defendants attempted to discredit these witnesses while the Commonwealth attempted to bolster their credibility. *See, e.g.*, Tr. V at 44 (closing of co-defendant); Tr. V at 84 (closing of Commonwealth). Manisy's counsel attempted to discredit Dame, while painting Dame as the leader of the robbery. Manisy's counsel's theory included the contention that, if Manisy was a drug dealer, it was a business and it made no sense for him to assume responsibility for repaying himself or to plan a robbery in an area with which he was unfamiliar. Rather, Dame would be more likely to plan the robbery. Petitioner's counsel also argued that Manisy would not have given Dame the authority to sell drugs without being paid for them beforehand, bolstering the claim that Dame made up a story about the need to repay Manisy and Manisy's involvement in the robbery. Similarly, counsel attempted to use the fact that drugs were bought with the proceeds of the robbery to Manisy's advantage, arguing that Dame wanted to sell the drugs to make even more money than what was obtained in the robbery. These theories, although ultimately unsuccessful, made sense. Defense "counsel's judgments in formulating the defense strategy are entitled to substantial deference." *Genius v. Pepe*, 147 F.3d at 66. Counsel's handling of Manisy's involvement with drugs did not constitute ineffective assistance of counsel.

Finally, for the reasons detailed above, there was no actual prejudice to the defendant—the evidence against him was strong. *See Scarpa v. DuBois*, 38 F.3d at 16. For these reasons, the motion to dismiss count three of the petition should be allowed.

## IV. *CONCLUSION*

For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the Motion to Dismiss be DENIED as to the alleged juror misconduct claim (count one), and that counsel be appointed to address that issue. This court further recommends that the Motion to Dismiss be ALLOWED

and the Renewed Motion to Appoint Counsel be DENIED as to the remaining two counts of the habeas petition.[9]

Mar. 10, 2003.

**9.** The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 and Habeas Corpus Rule 8(b), any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn*, 474 U.S. 140, 153–54, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–151 (1st Cir. 1994); *Santiago v. Canon U.S.A., Inc.*, 138 F.3d 1, 4 (1st Cir.1998).